ALMA CLAYBURGH, Appellant, *v.* ALBERT CLAYBURGH, Respondent. (Action No. 5.)

(Argued March 13, 1933; decided April 11, 1933.)

*Wilber W. Chambers* and *Edmund L. Mooney* for appellant. The plaintiff is entitled to recover from the defendant the amount paid out of her own moneys for the maintenance and support of the infant daughter. (*DeBrauwere* v. *DeBrauwere,* 203 N. Y. 460; *Laumeier* v. *Laumeier,* 237 N. Y. 357; *Manice* v. *Randolph,* 221 App. Div. 570.) There is nothing in the separation agreement which prevents the plaintiff from recovering from the defendant the moneys she expended out of her own separate property for the support and maintenance of the infant daughter. (*Manson* v. *Curtis,* 223 N. Y. 313; *United Paper Board Co.* v. *Iroquois Pulp & Paper Co.,* 226 N. Y. 38; *Johnson* v. *Johnson,* 157 App. Div. 289; *Van Roeder* v. *Miller,* 117 Misc. Rep. 106; *Ehrich* v. *Ehrich,* 211 App. Div. 490; *Gellert* v. *Gellert,* 128 Misc. Rep. 146; 219 App. Div. 737; *Brainard* v. *N. Y. C. R. R. Co.,* 242 N. Y. 125; *Farmers Loan & Trust Co.* v. *Park & Tilford,* 127 Misc. Rep. 59; *Onward Construction Co.* v. *Tiffany Studios,* 185 App. Div. 850; *Eisenberg* v. *Thorne,* 96 N. Y. Supp. 1020.)

*Max D. Steuer, J. Arthur Leve* and *Charles Pickett* for respondent. Plaintiff's liability is limited by the agreement to $15,000 plus the cost of the daughter's medical attendance, nurse and school expenses. (*Baumann* v. *Stetten,* 257 N. Y. 480; *Manson* v. *Curtis,* 223 N. Y. 313; *Fleischmann* v. *Furgueson,* 223 N. Y. 235; *Freston* v. *Lawrence Cement Co.,* 155 N. Y. 220; *O' Neil* v. *Van Tassel,* 137 N. Y. 297; *Galusha* v. *Galusha,* 116 N. Y. 635; *Duryea* v. *Bliven,* 122 N. Y. 567; *Wood* v. *Lucy, Lady Duff-Gordon,* 222 N. Y. 88; *Matter of Junge,* 125 Misc. Rep. 707; *Robia Holding Corp.* v. *Walker,* 257 N. Y. 431; *Hartog* v. *Piano & Kline, Inc.,* 260 N. Y. 79; *Montemarano* v. *Home Title Ins. Co.,* 258 N. Y. 478; *Land Filling & Improvement Co.* v. *Steers, Inc.,* 259 N. Y. 35; *Hoffstaeder* v. *Hoffstaeder,* 188 N. Y. Supp. 251; *Mead* v. *Mead,*

122 Misc. Rep. 175; *Schoelkopf* v. *Coatsworth*, 166 N. Y. 77; *Gillett* v. *Bank of America*, 160 N. Y. 549; *Burritt* v. *Burritt*, 29 Barb. 124.) The word " alimony," while including a provision for the support of a wife, in its broad sense means also an award for the support of a child or children. (*Schafer* v. *Schafer*, 118 Misc. Rep. 254; *Harris* v. *Harris*, 259 N. Y. 334; *Goldberg* v. *Goldberg*, 236 App. Div. 258; *Holahan* v. *Holahan*, 234 App. Div. 572; *Comfort* v. *Comfort*, 227 App. Div. 1; *Rosenblatt* v. *Rosenblatt*, 209 App. Div. 373; *Seitz* v. *Seitz*, 192 App. Div. 924; *Chadwick* v. *Chadwick*, 170 App. Div. 328; *Skidmore* v. *Skidmore*, 160 App. Div. 594; *Weingarten* v. *Weingarten*, 133 Misc. Rep. 681; 225 App. Div. 745; *Gatto* v. *Gatto*, 261 N. Y. Supp. 454; *Cesareo* v. *Cesareo*, 134 Misc. Rep. 88; *Faye* v. *Faye*, 131 Misc. Rep. 388.) During the period of nearly twelve years which elapsed between the execution of the separation agreement and the commencement of the action, plaintiff admitted repeatedly that it was intended by the agreement that the yearly allowance of $15,000 was to include provision for the daughter's general support. These admissions were not oral, tentative or capable of explanation.[1] On the contrary, they are a matter of record and speak for themselves. (*City of New York* v. *New York City Ry. Co.*, 193 N. Y. 543; *Carthage T. P. Mills* v. *Village of Carthage*, 200 N. Y. 1; *Morehouse* v. *Woodruff*, 218 N. Y. 494; *Brooklyn Public Library* v. *City of New York*, 250 N. Y. 495; *Matter of Koenig* v. *Flynn*, 258 N. Y. 292; 285 U. S. 375.)

CRANE, J. The parties to this action, husband and wife, entered into a separation agreement, dated October 21, 1916. Both parties were represented by distinguished lawyers, and the agreement bears evidence of the fact that it was prepared with great care to provide for all contingencies and to fix finally the rights of the respective

parties, including the obligations of the husband. There were two children, issue of the marriage, a boy and a girl, and the agreement provides for their care, keep and welfare. It would indeed be difficult to give a reason for such an agreement if it were not that the parties desired and intended to fix definitely their relative rights, and the husband to know his full and complete obligations. This is the reason for employing lawyers and paying them to give advice and draw papers. The work has been done so well that the agreement has stood unchallenged for nearly seventeen years, and even now there is no attempt to modify any of its provisions.

The agreement, in substance, provides as follows: The child, Albert Clayburgh, is to reside with the father. Of course the father assumes his support. The child, Evelyn Clayburgh, is to reside with the mother, and we would naturally expect the agreement to provide money enough to support them both, or to state to what extent the father would be liable for the daughter's support. No lawyer of any parts would leave this matter open for dispute.

The support of the wife and daughter and the limit of liability or obligation were the main, or only things the agreement was to deal with. Thus we find that both parties agreed that the children shall be brought up in a proper moral environment. The father provides for the medical attendance in case his daughter requires it, for a nurse, if necessary, and reserves to himself the right to select the school for her education. No neglect of the child upon the part of the father is at all apparent. He is mindful not only for her material but for her mental and spiritual welfare. And then we find, following all these safeguards for the daughter and her welfare, a money allowance made to the mother, with whom the child was to make her home. For a young child living with her mother, there being but two of them, the most unnatural

thing would be to make a separate allowance for the mother and a separate allowance for the child. As the mother, guardian, would look after her daughter and provide the comforts and necessaries of the one home, the amount paid her by the husband would be expected to cover both. Thus we find paragraph X, stating just what the money is for and what additional obligations, if any, the father assumes for his daughter:

" X. The party of the first part agrees that he will pay or cause to be paid to the party of the second part, so long as she may live and not remarry, during the lifetime of the party of the first part, the sum of Fifteen thousand dollars ($15,000) per year, and in the event of the decease of the party of the first part, thereafter the sum of Ten thousand dollars ($10,000) per year, in equal monthly instalments on the first day of each and every month, in lieu of alimony and in full for her support and maintenance. Such payments shall be made to the party of the second part in the City of New York or at any bank or trust company in the City of New York designated by the party of the second part. Upon the death or remarriage of the party of the second part, such payments shall at once cease and determine. In addition to the said payments the party of the first part will also pay the salary of the nurse, the medical attendance and the school expenses for the child Evelyn Clayburgh as hereinabove provided. The party of the second part agrees that she will accept the said sum hereinbefore agreed to be paid for her maintenance and support and the other terms and conditions of this agreement as hereinbefore set forth, and agrees that she will not at any time in the future contract or incur any debts or obligation upon which the party of the first part or his estate might or could be held liable or called upon to pay. * * * Upon payment by the party of the first part of the sums in this agreement provided to be paid by him, there shall be no further

obligation upon him under this agreement or otherwise, or in any contingency whatsoever, to make any payments or disbursements either to the party of the second part or for her use and benefit, or to any other party for her account or for her maintenance and support."

Separation agreements are to be read like any other agreements. The husband gives his wife $15,000 a year for her support. The little girl is to live with her. And " in addition " he agrees to pay the salary of the nurse, to pay for the medical attendance and for the school expenses for the child, *and nothing more.* The wife agrees that when he has paid these amounts he will not at any time be called upon to pay anything more. The specific words are, " Upon payment of the sums provided there shall be no further obligation upon him in any contingency whatsoever." Now the appellant would say that the agreement is meaningless; that there are other things " in addition " which the husband should pay; he should pay the wife for the support and maintenance by her of the child. She never thought of this during all of these years until 1928, and naturally only seeks to recover for the last six years, the rest of the claim being barred by the Statute of Limitations. Such belated action would be a strong indication in any other class of litigation that the claim is an after-thought and that she herself or her advisers never thought before 1928 that her agreement could possibly sustain such a claim.

To us this agreement is clear and needs no jury to assist the court in its interpretation.

The judgment should be affirmed, without costs.

CROUCH, J. (dissenting). We are dealing here solely with the construction of a written agreement. That construction may have no aid from any extrinsic facts appearing in the evidence. The intent of the parties and the import of their agreement must be drawn only from

the language of the instrument itself. No where within the four corners of that instrument can be found a plain and unambiguous statement that plaintiff was to support the daughter out of her own allowance.

In 1916, the parties then having two children, a son eight years old and a daughter one year old, entered into a separation agreement. After making the usual provision for separation and for living apart, the instrument provided that the son should reside with the father and the daughter with the mother; that the environment of the children should conserve their health, morals and proper development; that the domicile of the children should be the State of New York, from which neither could be removed except upon written consent; that certain rights of visitation should exist under specified conditions; that neither parent should do or say anything which might tend to diminish the love and respect of each child for both parents; that the wife should maintain out of the provided allowance a residence for herself; that a list of unpaid bills to date should be furnished by the wife and paid by the husband, together with a reasonable fee to the wife's counsel. The provisions relating to support and maintenance are as follows:

" X. The party of the first part agrees that he will pay * * * to the party of the second part, so long as she may live and not remarry, during the lifetime of the party of the first part, the sum of fifteen thousand dollars ($15,000) per year, and in the event of the decease of the party of the first part, thereafter the sum of ten thousand dollars ($10,000) per year * * * *in lieu of alimony and in full for her support and maintenance.* * * * Upon the death or remarriage of the party of the second part, such payments shall at once cease and determine. In addition to the said payments the party of the first part will also pay the salary of the nurse, the medical attendance and the school expenses of the

child Evelyn Clayburgh as hereinabove provided. The party of the second part agrees that she will accept the said sum hereinbefore agreed to be paid *for her maintenance and support* and the other terms and conditions of this agreement as hereinbefore set forth, and agrees that *she* will not at any time in the future contract or incur any debts or obligation upon which the party of the first part or his estate might or could be held liable or called upon to pay. \* \* \* Upon payment by the party of the first part of the sums in this agreement provided to be paid by him, there shall be no further obligation upon him under this agreement or otherwise, or in any contingency whatsoever, to make any payments or disbursements *either to the party of the second part or for her use and benefit, or to any other party for her account or for her maintenance and support."*

The provision in the above paragraph, relating to payments for nurse, medical attendance and schools for the daughter, must be read in connection with other provisions of the contract dealing with the same matters. It was provided, in substance, (a) that the daughter's medical care should be entrusted to a specialist in such matters, who in the first instance should be a designated doctor, but whose successor was to be chosen, not by either parent, but in a manner specified; (b) that a woman experienced in the care of children should at all times be employed as a nurse, and if a successor of the then acting nurse were to be chosen, the choice was to be made in the manner specified, with which neither parent had anything to do. In the event of a difference of opinion between mother and nurse as to the child's care, a medical referee was named; (c) the husband was to have the right to nominate three schools, one of which the wife might select for the daughter.

It seems obvious enough that the express agreement of the husband to pay these charges was made to settle

in advance any question as to whether such extraordinary items were necessaries; and, further perhaps because it gave the husband a desired measure of control.

It is clear that there was no express or specific provision made with reference to the general support and maintenance of the daughter. Had the distinguished lawyers who prepared this document intended that the annual payment of $15,000 was to cover the support and maintenance of the child, as well as of the wife, it would have been a simple matter to say so. What we find, however, is an iteration and reiteration of the plain statement that the allowance was intended for the support of the wife — " in lieu of alimony, and in full for *her* support and maintenance;" " to be paid for *her* maintenance and support;" " for *her* use and benefit;" " for *her* account or for *her* maintenance and support." Moreover, the agreement by the wife, to which attention is called in the prevailing opinion, that she would not at time in the future contract any debts upon which the husband might or could be held liable, can only be read by reason of the context as referring to debts contracted upon her own personal account. So also the provision that upon payment by the husband of the sums provided for there should be no further obligation upon him to make any payments or disbursements. The payments or disbursements referred to are expressly defined as being those for the use and benefit of the wife alone. Moreover, it is to be borne in mind that when the agreement was made the daughter was an infant one year old. It is quite unlikely that either party to the contract contemplated a gradual diminution of the wife's allowance in taking care of the increasing expenses of the daughter as she grew through girlhood and into young womanhood. Upon the husband rested the common-law liability to support the daughter. He ought not to be permitted as matter of law to shift that responsibility to his wife

except by an agreement expressed in the clearest terms. The contract, of course, is to be considered as a whole. The matters referred to in the prevailing opinion are to be given whatever weight they are entitled to. At most, as it seems to me, they serve only to cast some doubt upon the intent of the parties and the import of their agreement as expressed in the unambiguous phraseology above referred to. What we have at best, then, is a case for the jury, where the doubtful meaning of the written word may be considered in the light of evidence showing the surrounding facts and circumstances. (*Braxton* v. *Mendelson*, 233 N. Y. 122, 124; *Brainard* v. *New York Central R. R. Co.*, 242 N. Y. 125, 133.)

The judgment should be reversed and a new trial granted, with costs to the appellant to abide the event.

LEHMAN, KELLOGG and O'BRIEN, JJ., concur with CRANE, J.; CROUCH, J., dissents in opinion in which POUND, Ch. J., concurs; HUBBS, J., not voting.

Judgment affirmed.