FREDERIC B. O'BRIEN, Plaintiff, *v.* ELLIS M. SPRINGER, Defendant.

Supreme Court, Special Term, Herkimer County, August 30, 1951.

*Theodore P. Feury* for defendant.

*Albert W. Schneider* for plaintiff.

SEARL, J. Motion No. 1 seeks an order directing plaintiff to reply to the new matter set up in the answer.

Motion No. 2 seeks an order striking from the answer allegations '' Fourth to Fifteenth '', inclusive, as frivolous, irrelevant, redundant, and unnecessary.

Relating briefly past history, to allow a proper understanding of the situation that existed at the time of the commencement of the present action, the moving papers disclose the following state of facts: After partial trial of a separation action brought by Ellis Springer against his wife, Helen M. Springer, in 1937, in this court, in the village of Herkimer, both parties entered into a separation agreement whereby custody of the one-year-old child of the marriage, William J. Springer, was to be with the mother the greater portion of each year, the husband to pay the wife at the rate of $5 per week to continue until the child arrived at the age of sixteen years, unless extraordinary circumstances arose; and, as long as the husband observed the terms of the agreement, the wife agreed to make no further or other demand on the husband for the support, care or maintenance of the child.

The husband then went to Reno, Nevada, and commenced an action for absolute divorce on the grounds of mental cruelty. The wife entered an appearance through an attorney. On February 19, 1938, a District Judge in the County of Washoe signed a decree of divorce ratifying and approving the separation agreement, but stating that this agreement "is not merged in this decree." The prayer for relief in the complaint asked that the agreement be ratified, approved and declared to be fair, just, and equitable, and "recognized as a continuing agreement in and of itself and be not merged in any decree entered." Also the conclusions of law upon which the decree was based provided that the agreement "not be merged in the decree."

Following the decree of divorce, the husband remarried and in November, 1942, the wife married Frederic B. O'Brien, the plaintiff in the instant action.

The complaint alleges that between the dates of December 1, 1942, and January 31, 1950, plaintiff furnished to the infant son of defendant necessaries for his use, board, lodging, clothing, medical and dental attention, school books and supplies aggregating $7,440, *which sum defendant promised and agreed to pay plaintiff therefor;* that no part of the same has been paid except the sum of $5 weekly, or $1,850, "leaving justly due and owing the difference, $5,580.00", for which judgment is demanded. (Italics inserted.)

The answer is substantially a general denial. Then follows (Paragraphs "Fourth" through "Fourteenth") reference to the separation agreement, the institution of the action in Nevada, the pleadings and decree, the subsequent remarriage of the wife, the allegation that the wife has retained at all times the custody of the infant, and that plaintiff has never made any claim against defendant for necessaries furnished. The answer further alleges that defendant has performed all the terms and conditions of the agreement, that no proceeding has ever been brought seeking to modify the Nevada decree of which plaintiff had full knowledge, and that such decree is entitled to full faith and credit in all courts of the State of New York.

Defendant, on his motion to compel plaintiff to reply, urges that he is entitled to know before trial which of these allegations are denied to permit him to properly prepare his defense.

At first glance it would appear that if plaintiff can substantiate his claim that defendant promised and agreed to pay plaintiff for the sums advanced for necessaries that would

be the only issue and determination regardless of what transpired in the courts of Nevada. However, if plaintiff is relying on an implied promise to pay, on the theory that a father must, in all events, provide necessaries for his infant son, quite a different situation might arise. To avoid delays and possible complications at time of trial, the court here holds that plaintiff should reply to allegations in the answer " Four " to " Fourteenth " inclusive, with the exception of allegations " Fifth " and " Thirteenth ". (*O'Keefe* v. *Young & Rubicam,* 257 App. Div. 141.) As to the allegation of " full faith and credit ", that is a matter of law, which will be presently discussed.

As to necessaries furnished a minor son by a third party, it must be first shown that the father refused to furnish them. (*Loucks* v. *Dutcher,* 112 N. Y. S. 269.) Both at common law and statute (Penal Law, § 482, subd. 1) a father is liable for necessities furnished to an infant son. On the other hand, a stepfather is also responsible for the support of minor stepchildren (Social Welfare Law, § 101). The instant case is not one where a father has entered into an agreement with a person to support his child for a specified sum (*Galusha* v. *Galusha,* 138 N. Y. 272). A husband is liable to one who furnishes necessaries to an infant son, on the theory of an implied promise (*De Brauwere* v. *De Brauwere,* 203 N. Y. 460). On the other hand it has been said that where a child, who has resided with relatives, voluntarily furnishing support, no payment therefor being demanded of the parent, such relatives have no right of recovery. (*Haskell* v. *Haskell,* 201 App. Div. 414, affd. 236 N. Y. 635.) The Supreme Court of Wisconsin, in *Monk* v. *Hurlburt* (151 Wis. 41) held that a stepfather with whom an infant resided assumed the obligation of paying for necessaries, where the stepfather permitted a physician's services to be rendered without objection to the father. There the father had been ordered, in the divorce decree granted the mother, to pay $5 monthly during the child's minority.

In *Buckler* v. *Wolman* (190 Misc. 916) Justice FROESSEL, then sitting in Special Term, denied a grandmother of two infants recovery for necessaries furnished. Formerly the defendant had been ordered to pay his wife as temporary alimony $10 weekly for the support and maintenance of the children. The husband contested the grandmother's claim on the ground that the measure of his obligations had been fixed by the terms of the alimony order. Plaintiff contended that the rule was different where a third party, rather than the

wife, sought reimbursement for necessaries furnished. Justice FROESSEL followed the principle laid down in *Karminski* v. *Karminski* (260 App. Div. 491) to the effect that the decree of divorce fixed the sum payable for the support of the children of the marriage. There the court said (p. 494): "In so holding we do not relieve the father of the obligation to support his child. On the contrary, we uphold such obligation, but limit the amount of his liability to the sum fixed by the court's judgment until and unless such judgment is modified."

Therefore, I must hold in the present action that plaintiff cannot succeed unless he proves a promise on the part of defendant to repay the sums advanced by the plaintiff for the necessaries furnished the son.

How, it may properly be asked, can the Supreme Court of New York shirk responsibility in its duty to protect the interests of this boy, William J. Springer? When this Nevada decree was entered in February, 1938, he was an infant a year old. Five dollars a week at that time may have been adequate to provide him with milk and baby clothes. At no time was this infant, or his mother, actually before the court in Nevada. So far as it appears, the husband, the wife, and the child, prior to the husband's going to Nevada, were residents of New York State. Apparently all three are residents of this State at the present time. Someone may properly ask how can parents, dissatisfied with the marriage they have entered into, seek to void it by the laws of some sister State, possibly to gain a freedom to permit a subsequent marriage, and leave the young child of the marriage a pawn, with no legal claim other than a mere pittance, according to present standards, of $5 a week? The duty of a father includes that of providing a high school education, and in some instances, if special aptitude is shown, a college education. (*Halsted* v. *Halsted*, 228 App. Div. 298, Notes, 133 A. L. R. 902; 162 A. L. R. 1084.)

Clearly it cannot be urged logically that the infant, if relief is to be had, should travel to the State of Nevada, hire an attorney, and seek relief there.

The United States Supreme Court has recognized the need of an infant for protection in a somewhat similar situation. In 1933, Justice BRANDEIS wrote for the court in *Yarborough* v. *Yarborough* (290 U. S. 202). Justices STONE and CARDOZO dissented. The parents of a minor daughter resided in Georgia. The mother went to North Carolina. The daughter later followed her. The father brought action for divorce in Georgia.

The mother filed a cross claim in Georgia. The Georgia court granted the husband a decree and directed certain property to be transferred to a trustee for the daughter in full settlement. The infant daughter then moved to South Carolina and through her guardian ad litem brought an action in the latter State for education and maintenance. The father claimed his responsibility was measured by the Georgia decree and that the judgment there was entitled to full faith and credit in South Carolina. The daughter claimed she was not a resident of Georgia when the decree was made. The court held that as by the laws of Georgia the domicile of the daughter was that of the father, she was therefore bound by the decree. As the law of New York (Domestic Relations Law, § 81) provides that '' A married woman is a joint guardian of her children with her husband, with equal powers, rights and duties in regard to them '', we may well assume that if Georgia law were similar to New York in this respect the decision of the court could well have been different.

The dissenting opinion of Justice STONE, in which Justice CARDOZO concurred, included the following apt expression: '' The maintenance and support of children domiciled within a state, like their education and custody, is a subject in which government itself is deemed to have a peculiar interest and concern.'' (290 U. S. 220.)

Reverting now to applicable New York law: In *Snyder* v. *Snyder* (72 N. Y. S. 2d 881) an action was brought by two infant children, through a guardian ad litem, against the father to modify the provisions of a Nevada decree. The guardian asked that a provision requiring defendant to pay $100 a month for the support of each infant be increased. The question presented was whether a New York court had jurisdiction, the parties residing now in New York State, to modify a decree of a sister State. The children sought not to vacate the provisions of the Nevada decree, but to increase the amount allowed under it. Justice HECHT, sitting in Special Term, held that as the law in Nevada as it then stood (1947) gave no power to the court, in the absence of a specific reservation to modify as to support, the courts of New York could grant no relief. Since then, however, a Statute of Nevada has been enacted in 1947, (Nevada Compiled Laws, § 9462), providing that changes of custody or support may be made by the court when it appears for the best interests of infants.

Since the decision in *Snyder* v. *Snyder,* last above-referred to, Justice Hofstadter wrote in *Farah* v. *Farah* (196 Misc. 460). There a Nevada decree was granted to the mother, upon the appearance of her husband, after a separation agreement had been executed. In discussing the question of the right of a child of the parties, through a guardian, to attack the Nevada decree collaterally, the court held that there was no proof that either the separation agreement or the decree was prejudicial to the rights of the infant. The court further held, however, (p. 463) that neither the agreement nor decree " made in an action to which the plaintiff was not a party stands in the way of the vindication of this right." The comment was made (p. 464) that in a proper case this court would " entertain sympatheti-cally an infant's plea that the duty in which the State has such a vital interest was not being met." The effect of the ruling of the court was that if the rights of the infant were being jeop-ardized, or if the infant needed judicial protection, such protec-tion would be afforded. In other words, as applied to the instant case, if the infant's representative could show that neither his mother nor stepfather was able or willing to give him proper maintenance or schooling, the court could then compel the father to provide. Summary judgment granted in the *Farah* case was affirmed (276 App. Div. 1000) without opinion. Logi-cally the conclusion is reached that the Appellate Division accepted the reasoning of the trial court. It will be noted the Nevada decree was held to have " embodied " the separation agreement in the decree, while in the instant case, although the Nevada court approved of the agreement, yet both the findings and decree recited that the agreement " is not merged " in the decree.

The inclination of courts generally to place the increased cost of an infant's support where it belongs, namely on the father, is apparent, where the statutes of a sister State permit. (See *Clarke* v. *Clarke,* 198 Misc. 702.)

The separation agreement, as well as the decree, provided for the payment of $5 per week only until the son arrives at the age of sixteen years. Therefore, the provisions as recognized by Nevada will cease at that time. The obligation of the father does not so cease. So far as is disclosed the son has never been in Nevada.

This infant son, the subject of this litigation, should have at least a high school education. The stepfather may be willing to provide it; if not, the primary obligation rests on the natural father, if financial circumstances permit.

The free world recognizes today, more than ever, that at least a high school education is included within the legal term "necessaries". If our youth is to be adequately indoctrinated with the privileges of a republican form of government and our democratic way of life, education is the answer. All respect the little old red schoolhouse and all those leaders of the nation who were taught there. New exigencies have now arisen. With our way of life threatened, we look to armament. Next in importance is to constantly and efficiently teach our boys and girls the appreciation of what America is giving them. Our youth is going into the armed services by the thousands. They should not be compelled to ask themselves "What are we fighting for?"

Motion No. 2 herein is denied. This is not to deny the boy, William J. Springer, any rights. If the proof in this case fails to develop an express promise on the part of the defendant to pay the necessaries, the plaintiff might rely on a promise implied by law. In that event, the allegations set forth in paragraphs "Four to Fourteen" might become material.

Order accordingly.