ODESSA FOWLER, Complainant, *v.* PHILIP J. RIZZUTO, Defendant.

Court of Special Sessions of the City of New York, May 28, 1954.

*Emil K. Ellis* for complainant.

*Irving Mendelson* for defendant.

Davidson, J. This is in effect a request by the complainant for a hearing in open court whereat the defendant is to be examined with regard to his finances. The complainant in her affidavit states that the defendant has grossly understated his means and resources and attempts to show the court that his wealth is far greater than he has indicated to the court's probation department.

It is true, as a matter of practice, that this court does inquire as to the finances of a defendant in filiation proceedings when fixing either a temporary or permanent order for the support of a natural child. This inquiry is conducted sometimes by its probation department or both.

However the court is limited completely by the statute pursuant to which it assumes jurisdiction in paternity cases.

There is no provision in our statute for anything akin to a supplementary proceeding examination. This is a purely civil remedy. A paternity action is a quasi-criminal proceeding and has been so denominated by our Court of Appeals (*Matter of Clausi*, 296 N. Y. 354).

Nowhere in the criminal law can a defendant be made to testify against himself. Section 67 of our statute, the New York City Criminal Courts Act, says, " but the defendant shall not be compelled to testify." Presumably the court could fix an amount for the support of a child within the framework and limitation of the statute and order its payment, thus obliquely forcing a defendant to give evidence to justify a reduction. However the court must be ever mindful of the purpose, intent and limitation which the statute indicates.

We are bound by subdivision 4 of section 61 of the New York City Criminal Courts Act which provides as follows: " The word ' support ' as used in this article may include (a) the necessary support and education of the child either prior or subsequent to the order of filiation, according to the age of the child and the station in life of its mother and the financial ability of the parents, (b) the funeral expenses of the child should it die, (c) the liability on the part of the father to pay the reasonable expenses of the mother's confinement and recovery and such reasonable expenses in connection with her pregnancy as the court in its discretion may deem proper."

From this we see:

A.— The support is for the child not its mother.

B.— The support is to be only so much as is necessary.

C.— It must be according to the age of the child.

D.— It must be according to the station in life of the mother; and

E.— It must be according to the financial ability of the parents.

Let us further analyze these requirements.

The words, '' according to the age of the child and the station in life of its mother and the financial ability of the parents,'' are revealing. It is clear that the mother cannot advance her station at the defendant's expense. This is a legislative reflection of public policy dating back to the English precourser of our paternity statute.

There was formerly a legal limit of one pound per week for the child born out of wedlock, which might not be exceeded though the father had the wealth of Croesus. (The Bastardy Laws Amendment Act, 1872, 35, 36 Vict. ch. 65, §§ 3, 4, 5.)

The words of the statute set forth (*supra*) give consideration to the father's financial ability only so far as that status may meet the child's necessary support in accordance with its mother's station.

It is the mother's child and she is the sole custodian and will rear it according to her station.

The defendant, in accordance with his means, must pay the full amount he is able to meet the requirements of a child limited by the station in life of that child's mother.

If the law discriminates in this regard between a natural child and one born of parents who are married to each other, the court must wait until the Legislature sees fit to eliminate that discrimination.

Schatkin, in his authoritative work, Disputed Paternity Proceedings (3d ed.), after discussing a line of decisions construing the phrase '' ' according to the station in life of its mother ','' states (p. 416): '' the phrase ' according to the station in life of its mother ', is one of limitation, and has the effect of keeping the amount of the filiation order within limits, consonant with the mother's station in life.''

The papers submitted by the complainant contain many allegations and exhibits. She says she earns on average $40 a week and that she pays $20 per week for the support of her child. In this case the court allowed complainant and her counsel to learn of the defendant's voluntary disclosures of

his financial status to our probation department. The complainant takes issue with the defendant's evaluation of his income and wealth.

It is immaterial whether the 1,650 shares of stock which the defendant owns in Southland Frozen Foods, Inc., are worth $82,500 or, as complainant asserts $400,000. It is immaterial whether the defendant has a net income after taxes of $17,000 per year or $52,000 per year. The court is not concerned with his other stockholdings or his Cadillac.

The court will not concern itself with this disputation because the defendant's own admitted evaluation of his financial status makes it clear that he is able to pay the maximum amount which any proper legal order may provide, bearing in mind that such order is limited as heretofore explained.

The order presently provides for $25 weekly and $250 lying in and medical expenses. These amounts are hereby confirmed as fixed.

MULCAHY and HADDOCK, JJ., concur.