Burke, J.
The question presented on this appeal pertains to a construction of the New York City Criminal Courts Act (art. V, § 61, subd. 4) relevant to the amount of support which may be decreed in filiation proceedings.
Section 69 of that act requires that, if paternity be established, ‘ ‘ the court shall make an order of filiation * * * and shall order support ”.
Since no question is raised as to paternity, we are occupied only with the disputed construction of the particular section of the act defining “ support ”.
By virtue of subdivision 4 of section 61, ‘ ‘ The word ‘ support ’ as used in this article may include (a) the necessary support and education of the child either prior or subsequent to the order of filiation, according to the age of the child and the station in life of its mother and the financial ability of the parents ”.
On the trial, defendant’s attorney stipulated that the defendant was capable of paying any award that the court would make within- the limitations of the New York City Criminal Courts Act (art. V, § 61, subd. 4) as construed by Fowler v. Rizzuto (205 Misc. 1088). The Court of Special Sessions in reliance on the Fowler case did not inquire into the financial means of the father but limited its inquiry to the station in life of the child’s mother and fixed the support award accordingly.
"We agree with the decision and opinion of the Appellate *411 Division insofar as it rejects the construction of the statute adopted by the Court of Special Sessions and requires that consideration be given the financial ability of the father to provide support.
The sole purpose of the first bastardy law was to indemnify the community against the possibility that a natural mother or a child born of an illicit relationship might become a public charge. Hence, support awards were considered adequate if they prevented this eventuality by providing an amount sufficient to afford the bare necessities otherwise required to be supplied by the community. This, however, no longer reflects the social philosophy present in the laws of this State. "When the Legislature in 1925 (L. 1925, ch. 255) enacted article VIII of the Domestic Relations Law (which is practically identical in substantive matters to the act under consideration), it recognized more fully the moral obligation of the natural parents toward the offspring of their union. The new law, although providing for indemnification of the community, is chiefly concerned with the welfare of the child (see N. Y. Legis. Doc., 1925, No. 106, pp. 13-18).
Consonant with this general purport, the statute under review should be liberally construed. This the sessions court failed to do. The omission to inquire more fully into the father’s means violated both the letter and spirit of the act.
In delegating to the court the task of effectuating the statutory intent to provide for the welfare of illegitimate children, the Legislature did so in terms broad enough to deny a narrow definition. The determination was left to the discretion of the court. The only mandate contained in the statute is that the support is to be “necessary” according to the “age of the child and the station in life of its mother and the financial ability of the parents ” (N. Y. City Crim. Cts. Act, art. V, § 61, subd. 4). As we read these terms the statute requires that in exercising its discretion the court should bring to bear upon the paternity case before it each of these criteria, keeping in mind at all times the statute’s primary purpose. We find nothing to indicate, as appellant contends, that the “ station in life of its mother ” was intended to serve as a fixed and invariable maximum, rendering immaterial the father’s means except insofar as they suffice to meet this maximum. If such were the ease it would mean that an illegitimate child born to an impov *412 erished woman or one of obviously low station would have to suffer the added misfortune of a meager support award, sufficient only to provide for his needs at that humble level, regardless of the father’s ability to afford a comfortable or advantageous existence. The possibility of such a result convincingly discredits appellant’s view. Nor is the father’s financial ability the sole criterion. As the statute makes plain, a court, in fixing the measure of support, must enter an order taking into account the mother’s station in life and the father’s financial ability.
It is true, as stated by the court in the Fowler case (205 Misc. 1088, supra), that it is not the purpose of the statute to permit a natural mother to raise her station in life at the expense of the father. It does not follow, however, that a support award in an amount greater than could ordinarily be afforded by the natural mother would necessarily have this result. As pointed out by the Appellate Division below, it is entirely possible to make decent provision for the child without at the same time advancing to any appreciable extent the social position or station of the mother. This is particularly true as section 70 of the act makes provision for the appointment of a trustee whose duty it is to report to the court as to the disbursement of support money.
The sessions court, therefore, has misconstrued section 61 (subd. 4, par. [a]) of the statute by reading into that section an unwarranted limitation and by failing to give due consideration to the father’s financial means.
The Appellate Division so found, but instead of remanding the case to the trial court to take evidence as to the father’s means, increased the award on the record before it. Respondent and appellant agree that no evidence was taken in the Court of Special Sessions concerning the defendant’s financial resources. The Appellate Division apparently relied on the concession made by the defendant at the trial. That stipulation, however, was an admission that defendant is capable of paying any award within the limitations of the rule of the Fowler case, viz., not exceeding an amount sufficient to raise the child according to the station in life of the mother.
The only evidence in the record relating to the defendant’s financial circumstances established the residence of the defendant as a well-appointed apartment in a fashionable hotel in *413 New York City. This evidence is, as a matter of law, too scant to serve as a basis for modification.
Accordingly, the order of the Appellate Division insofar as it fixed the amount of the support award should he reversed, the award vacated, and the cause remanded to the trial court for further proceedings in conformity with this opinion.
Conway, Ch. J., Desmond, Dye, Fuld, Fboessel and Van Voobhis, JJ., concur.
Order reversed and matter remitted to the trial court for further proceedings not inconsistent with the opinion herein.