In the Matter of F.L.C., Respondent, v E.W.P., Appellant.

Fourth Department, October 31, 1975

*Houghton & Pappas (Thomas Lenweaver* of counsel), for appellant.

*Burger, Pogal, Nessler & Schulman (Edwin R. Schulman* of counsel), for respondent.

WITMER, J. This is an appeal by respondent from a Family Court order entered on August 21, 1974 (1) modifying an order of that court dated April 3, 1970 by increasing the support provisions for the son of the parties from $40 to $75 per week,

(2) directing respondent to reimburse petitioner in the sum of $8,200 for her expenses in supporting said child, B, from the time of his birth until April 3, 1970, and (3) directing that when B, born in 1959, is ready to go to college and qualifies for and wishes to go to college, respondent pay his tuition and room and board thereat in an amount not to exceed the sum of $3,500 per year until B is graduated or attains 21 years of age. The petition in support of this order did not contain a request that respondent pay for B's college education.

Petitioner was married and living with her husband and two daughters at the time of B's birth in 1959; and respondent-appellant was then married and living with his wife and four sons. At all times appellant admitted paternity of B, and he paid petitioner's hospital expenses at the time of the birth. Petitioner took employment, and she was then often out of town for extended periods. This necessitated that she arrange to have B cared for, and she placed him in the weekly care of one S. Appellant did not contribute to B's regular support until he became 10 years old, but on three occasions at petitioner's request he paid amounts to S totaling $800 for B's care. Beginning in 1967 appellant also paid B's summer camping expenses annually through 1973. Appellant testified that petitioner did not ask him to contribute anything more to B prior to September, 1969, and that he always paid whatever she asked him to pay for B. Petitioner contradicts this, testifying that she often asked appellant to pay for B's regular support but he refused. She testified, nevertheless, that appellant lent her money from time to time and that she always repaid such loans.

In September, 1969 appellant and petitioner agreed that he would henceforth contribute $40 weekly to B's support, and he has paid such sum regularly ever since. For some reason which does not appear in the record, in February, 1970 petitioner petitioned Family Court for an order based upon a stipulation between her and appellant in which he admitted paternity of B and agreed (1) to continue to pay $40 weekly for his support, (2) to pay for Blue Cross and Blue Shield insurance for him, and (3) to pay petitioner's counsel in that proceeding a fee of $150. An order to such effect was entered on April 3, 1970, and appellant has fully complied therewith.

Petitioner worked full time from shortly after B's birth until 1970, receiving a good income, but she has only worked part of the time since then. During this period respondent was

employed as an officer of a prosperous company and received compensation based in large part on commissions, so that it varied from year to year. He had a heart attack in 1966 but made a good recovery. Many months before this proceeding was begun respondent notified his company that he intended to retire in one year, to wit, on July 1, 1974. He did this for reasons of health and to pursue a writing career. On July 1, 1974, one month before the hearing in Family Court in this proceeding, he did retire, at the age of 57 years. At that time two of his sons had been graduated from college and the other two had attended college but quit of their own volition; and all were self-supporting. On his retirement respondent became entitled to over $70,000 from the sale of stock in his company, to be paid to him over a three-year period, and he had pension rights of $594.64 per month. He also had some debts. Respondent's adjusted gross income in 1969 was about $26,000. In 1970 it was about $23,000; and in 1973 it was $32,750.

In this proceeding petitioner sought an increase in the monthly support for B based upon her alleged increased costs of supporting him and on respondent's increased income and assets. There is no doubt as to the right of the court to modify a support order with respect to provisions for the future support of a child (Family Ct Act, §§ 451 and 548; *Matter of Nardone v Coyne*, 23 AD2d 819, affd 18 NY2d 626; *Matter of Van Order v Hawley*, 34 AD2d 591). The amount to be fixed depends upon the reasonable needs of the child and the ability of the parent. Some items listed by petitioner as needed for B appear to be unnecessary or overstated. Although respondent's family expenses are much less now than in 1970, his income is also substantially less. We conclude that the increase of the weekly payments directed by Family Court from $40 to $75 to be made by respondent was excessive, that an increase to the sum of $55 is reasonable (see *Matter of Nardone and Matter of Van Order, supra),* and that the order should be modified accordingly.

The provision in the order directing respondent to pay petitioner the sum of $8,200 in reimbursement for her expenses of support of B from the date of his birth until September, 1969 must be deleted. Respondent testified that he paid to petitioner and for B everything that petitioner requested him to pay. During much of this time petitioner was also living with her husband and two daughters. Petitioner testified that she borrowed money from time to time from

respondent and repaid him. The record, therefore, will not support a finding that petitioner considered that respondent was indebted to her for such support or expected that he would pay it or reimburse her for it; and in such circumstances petitioner is not entitled to be paid therefor *(Swanton v Curley,* 273 NY 325, 329). Even if petitioner had asked for and expected payment, however, her claim would be limited by the Statute of Limitations (see *Clayburgh v Clayburgh,* 261 NY 464, 469). Beyond that, however, petitioner is bound by the order of April 3, 1970 which declared respondent's paternity of B and fixed his obligations for support, subject, of course, to be modified with respect to future needs. Any other claim which could then have been litigated should have been determined therein, and, failing that, was concluded by that order (see *Turner v Woolworth,* 221 NY 425; *McManus v McManus,* 39 AD2d 775; *Rexer v Rexer,* 18 AD2d 935; *Karminski v Karminski,* 260 App Div 491; and see *Horne v Horne,* 22 NY2d 219, 222; *Dravecka v Richard,* 267 NY 180, 182–183).

In *Karminski (supra,* pp 492–493) the court said:

"The questions presented are whether the liability of the husband for the support of the child is limited by the decree previously made, and whether the court may retroactively effect an increase in the husband's liability, even though the amount involved relates to necessary expenses of an extraordinary or unforeseen nature.

"No question is presented concerning the power of the court to modify its decree to increase or otherwise alter the husband's future obligations.

"We think the order appealed from is erroneous.

"The rule is stated in *Turner v Woolworth* (221 NY 425): 'The rule is that alimony, when alloted, measures the husband's duty of support. * * * Any other conclusion might lead in practice to gross abuses. There would be little end to litigation if such orders settled nothing.'"

It is true that the cited case related to alimony and the support of a legitimate child, but the principle is the same.

It remains to consider the provision in the order directing that respondent pay for B's college education. The record indicates that B, although only 15 years old at the time of the hearing, may be good "college material", that is, to date he appears to have good school grades. Although the petition

contains no request for a direction that respondent pay for B's college education, evidence was presented that respondent's four sons attended college, that two of them were graduated therefrom, and that it cost respondent $3,500 per year for each child in college. Family Court ruled that B "is entitled to the same advantages of education as his half brothers * * * Therefore, respondent is to pay the tuition, room and board for college for B * * * if he qualifies for college and desires to attend", in which event respondent, "is to pay the tuition therefor and his room and board at college, not to exceed a total of $3,500 per year, until he graduates from college or becomes twenty-one years of age".

The record does not reveal how far along B is in school, but college for him appears to be at least two years away. No showing is made as to B's academic interest or the college he wishes to attend; nor whether he has made any application to or been tentatively accepted by any college. Neither was any attempt made to show what B's expense needs will be in the college of his choice, nor whether he will have the benefit of scholarships. It is patent that the order was made on the basis of what respondent had paid for his sons; and it was in the nature of a declaratory judgment that B should have equal advantages. Despite the provision of section 545 of the Family Court Act which authorizes the court to direct a father to pay for his child's support and education, this order was, in this respect, beyond the scope of the petition and the proceeding and it was premature.

Moreover, the law of New York is that a parent may not be required to pay for his child's education beyond high school, because that has not been deemed "a necessary" (*International Text Book Co. v Connelly,* 206 NY 188, 195; *Matter of Hawley v Doucette,* 43 AD2d 713; *Roe v Doe,* 36 AD2d 162). The argument for requiring a parent to pay for his child's education got off to a bad start in the pioneer case of *International Text Book Co. v Connelly (supra),* possibly because of the way the point arose. There the plaintiff sought to require a parent to pay the contract obligation assumed by his minor child for a correspondence school education. Nevertheless, in that case the court indicated that upon a showing of special physical or other disability in the child, a child's education beyond high school might be found to be "a necessary". (To like effect, see *Halsted v Halsted,* 228 App Div 298, 299; *O'Brien v Springer,* 202 Misc 210, 214.) This seems to be in

accord with the basic principle that "the obligation of a father for the support of his children is governed by their needs in relation to his financial ability" *(Brock v Brock,* 4 AD2d 747). Indeed, in view of the increasing need of a higher education for success in the world, it has been stated that where a parent has the means, a college education for his children is in fact if not in law "a necessary" (see *Matter of Weingast v Weingast,* 44 Misc 2d 952; *Cohen v Cohen,* 193 Misc 106).

Pursuant to that principle, in *Matter of Kotkin v Kerner* (29 AD2d 367) the First Department ordered a father to pay for his 18-year-old son's further private school education. However, where in a later case it did not clearly appear that the son would especially benefit from higher education, the court declined to direct the father to pay therefor *(Matter of G. v G.,* 42 AD2d 555; and see, likewise, *Matter of Bates v Bates,* 62 Misc 2d 498, 505). And of course there are many people today who espouse the thought that a college education is not necessarily a good thing for many or a majority of our young people.

Apparently the public has not come to believe that the matter of a college education for children should be removed from the discretion of parents, for the Legislature has not undertaken to enact mandates or guidelines in this respect. In the absence of legislation we are guided by the common-law development in this area, which to date, as above noted, has narrowly limited the right of the court to direct a parent to pay for a college education for his child, such right being dependent upon a showing of the child's special needs. Thus, however desirable and commendable such education may be, the courts will not direct the parent to furnish it in the absence of facts shown to exist at the time of the application, demonstrating that the child has a special need for such advanced education. Such demonstration has not been made in this case; and the provision directing respondent to pay for B's college education must be deleted from the order, without prejudice to a new application in due time upon a suitable showing.

The order appealed from, therefore, should be modified by deleting the provisions (1) for the payment of $8,200 to petitioner and (2) for payment of a college education for B, and by reducing the provision for weekly support for B to the sum of $55, thus modifying the original order of April 3, 1970 in this respect by increasing the weekly support payments from

$40 to $55, and the order appealed from as so modified should be affirmed.

MOULE, J. P., SIMONS, MAHONEY and GOLDMAN, JJ., concur.

Order unanimously modified in accordance with opinion by WITMER, J. and, as modified, affirmed, without costs.