Edward J. McLaughlin, J.
The original petitioner has, pursuant to section 171 of the Family Court Act, filed three petitions for modification of the order of support of this court dated June 17, 1974.
The petition dated July 16, 1974 requests that respondent *281 be liable for medical, dental, and optical needs for the petitioner and the subject child of the parties.
The petition dated May 13, 1975 requests that respondent be liable for medical, dental, and optical needs of the child as well as his private schooling expenses, and further requests that respondent be obligated to set aside necessary funds in trust for the child’s college education and related items in obtaining a degree.
The petition dated March 31, 1976 requests an annual (sic) increase in the $125 weekly support order to meet inflationary trends.
The petition dated July 16, 1974 is dismissed on the grounds that the medical, dental, and optical needs of the child are before the court pursuant to the filing of the petition of March 31, 1976, and for the further reason that the petitioner herself is not entitled to support pursuant to section 513 of the Family Court Act.
The petition dated May 13, 1975 is dismissed on the grounds that the medical, dental, and optical needs of the child as well as the expenses of his education are before the court pursuant to the filing of the petition of March 31, 1976. The prayer for establishment of a trust fund to cover the cost of the child’s college education is dismissed as being premature since nothing more was alleged than a present intent on the part of the child to seek higher education in the distant future (Matter of F.L.C. v E.W.P., 49 AD2d 263).
Accordingly, before the court for decision is the petition of March 31, 1976 requesting an increase in support. This matter presents to the court the recurring problem as to the standards by which a child born out of wedlock is entitled to support by his father. The problem is made more compelling as a result of the recent United States Supreme Court decisions with regard to the distinctions between what is due to a child born in wedlock and to a child born out of wedlock. Reduced to its simplest terms, the issues presented here are whether the standard of support due pursuant to article 5 is identical to the article 4 standard, and if not whether the distinctions between the standards can stand constitutional muster in light of the Supreme Court cases of Levy v Louisiana (391 US 68) and Mathews v Lucas (427 US 495) and cases cited therein.
This court holds that section 513 of the Family Court Act does establish a standard of support for the child different *282 than the standard of support mandated by article 4, and that this distinction is not such a classification as to deny the out-of-wedlock child equal protection of the laws in derogation of his rights under the Fourteenth Amendment to the United States Constitution.
FACTS
In order to put the decision of the court in proper perspective a review of the facts of the case is necessary.
A petition under article 5 of the Family Court Act was filed with this court, and an order of filiation was made by the court on the 29th day of June, 1964 declaring the above-named respondent to be the father of the subject child born to the petitioner on the third day of August, 1963.
The original support order of $50 per week, dated August 21, 1964, was reversed and the amount increased to $100 per week by the Appellate Division. (Matter of Nardone v Coyne, 23 AD2d 819, affd 18 NY2d 626).
By stipulation of the parties before this Family Court on June 17, 1974 this amount was modified to $125 per week support for the child. It is this stipulated order that the petitioner now seeks to modify.
Further, the uncontested testimony of petitioner with regard to the family unit was that she, the child here involved, and a disabled 26-year-old son of the petitioner from a prior marriage, all share the family home which she purchased for their use. In addition, the petitioner contended that she receives no alimony from her former husband, nor does the child of that marriage receive support from his father. The petitioner herself is unemployed and the family income, other than the support for the child, is the disability payment received by the 26-year-old son from which he contributes to her $25 per week for his room and board.
LAW
I. Change of Circumstance
The test used to determine if a modification is proper is whether there has been a material change of circumstances between the parties since the prior order (Matter of Sullivan v Sullivan, 55 Misc 2d 691, affd 29 AD2d 739; Hansom v Hansom, 75 Misc 2d 3). The petitioner claims that an increase in support is necessary due to inflation, without showing any *283 particular increase in the expenditures for the child in question. The court points out that a mere rise in the cost of living without demonstrating its impact on the child will not be considered grounds for modification of a support order (Schine v Schine, 45 AD2d 687; Matter of Dunn v Wescott, 81 Misc 2d 501).
The court is cognizant of the fact that the petitioner is appearing pro se, and therefore will use its discretion to interpret her arguments in the best light possible, for her arguments not only advance her own interests, but also advance the interests of the child, which the court has the paramount duty to protect. Therefore, the court will make a determination of what the support would be from the facts presented. If it substantially differs from the amount of the prior order, the court shall consider the facts which were presented to determine the award as a definite showing of facts that demonstrate that the parties’ positions have changed since the prior award (Matter of Amicucci v Moore, 42 AD2d 701).
II. The Test Applied To Determine Article 5 Support
The petitioner claims that the test to be applied to determine article 5 support is that the child is entitled to the standard of living as that to which a child born of a marriage would be entitled under article 4. The court disagrees with this contention.
The father’s standard of living is not determinative of the level of support to which the child is entitled. Section 513 of the Family Court Act is the provision which creates the test to determine what support a child born out of wedlock is entitled, whereas section 413 of the Family Court Act establishes the tests under article 4 for both amount of the award due to the child born in wedlock and the apportionment of that award to his parents. Section 513 of the Family Court Act, unlike section 413, does not make the father primarily responsible for support, but makes both parents jointly and sever-ably liable for the "necessary support and education of the child.” (Matter of Sarah S. v John K., 70 Misc 2d 803; Matter of Stone v Chip, 68 Misc 2d 134.)
Section 545 of the Family Court Act establishes the standard by which is determined the portion of the support award that the father is responsible to pay. It allows the court to impose upon the father part or all of the amount needed to assure that the child has the necessary support and education. *284 Section 545 of the Family Court Act differs from section 413 of the Family Court Act in the test to determine the amount of support owed by the father. Whereas section 413 states that the father is liable "to pay for the child’s support a fair and reasonable sum according to his means”, the test applied in section 545 for apportionment of support is "a fair and reasonable sum for the support and education of the child.” Section 545 was drafted with the intent to make the "needs of the child, the financial ability of the parents, and their total responsibilities decisive in paternity as in support proceedings.” (Committee Comments, McKinney’s Cons Laws of NY, Book 29A, Family Ct Act, § 545, p 494.) This statute was enacted in line with Schaschlo v Taishoifil AD2d 543, revd on other grounds 2 NY2d 408), which held that the father’s ability to pay, not only the mother’s station in life, should be a consideration in determining a paternity support award. The legislative intent does not mean that the child is entitled to have support determined by the father’s standard of living, but rather that the test of the amount of the order, derived from Schaschlo, will be done in a balance test between needs and ability to pay as is done in section 413 of the Family Court Act.
The court in Matter of Storm v None (57 Misc 2d 342) applied section 413 standards of support to article 5 proceedings. That court declared that two Supreme Court cases, Levy v Louisiana (supra) and Glona v American Guar. Co. (391 US 73), give the child born out of wedlock to the father the same rights to support as the child born in wedlock to the father, through the equal protection clause of the Fourteenth Amendment of the United States Constitution.
That court notes the difference in the support tests of sections 413 and 513 of the Family Court Act. It interprets Levy and Glona as supporting its holding that "If children born out of wedlock are no longer to be burdened by invidious classifications as compared to children born in wedlock, the child must be held to be entitled to 'fair and reasonable support based on the father’s means, as the court may determine.’ ” (Matter of Storm v None, supra, p 347.)
This court cannot accept the holding of Matter of Storm v None. It is true that the Levy and Glona cases (supra), stand for the proposition that illegitimate children are entitled to the same rights as legitimate children. This does not make unconstitutional a legislative classification between the tests *285 used to determine support awards between legitimate and natural children. Levy and Glona (supra) deal with rulings that the word "children” in the Louisiana wrongful death statute was limited to only legitimate children. In the Levy case (supra) the Louisiana courts refused the right of a child born out of wedlock to bring a wrongful death action of a parent. In Glona, that State’s courts refused a parent’s action for the loss of an out-of-wedlock child. In the Levy case (supra) it was stated that a child born out of wedlock should not be denied rights due to an invidious classification. Glona states that a person is denied equal protection where she is excluded from a right due to a legislative classification of her as a sinner.
Levy and Glona are not applicable to section 513 of the Family Court Act. Unlike Levy, the child born out of wedlock is not denied a right. The out-of-wedlock child is not denied the right to support, he only has a different test applied to determine support due him. Equal protection does not require "absolute equality” or "exactly equal rights” (Ross v Mofitt, 417 US 600, 612).
Children born out of wedlock are not granted "suspect” classification (Mathews v Lucas, supra). Therefore, legislative classification must be either "patently arbitrary” or irrationably related to a legitimate governmental interest for a court to reject it on equal protection grounds (Frontiero v Richardson, 411 US 677, 683). Unlike Glona, the difference between sections 513 and 413 of the Family Court Act is not based on sin. Rather, the distinction between the two sections, rationally based on the government’s interest in the welfare of children born in wedlock and those born out of wedlock to their parents, would be valid grounds to sustain the different tests used (Weber v Aetna Cas. & Sur. Co., 406 US 164).
The government has the responsibility to care for the best interests of the child, whether the child was born in or out of wedlock. The Legislature has decided that different standards of determining support are needed for just cause. The mother of an out-of-wedlock child is not in the same position as a wife under article 4 of the Family Court Act or a former wife under section 236 of the Domestic Relations Law.
The mother of a child born out of wedlock is not entitled to support from the father of the child. Therefore, it is quite possible for the parents of an out-of-wedlock child to have completely different standards of living.
*286 The Legislature has determined that the out-of-wedlock child should not be given support according to the father’s standard of living solely. This would tend to cause strife in that child’s household where there is a great disparity between the standards of living of the father and mother. This could create a situation of the child eating filet mignon and the rest of his household eating gruel, where the standard of living of the father is vastly higher than that of the mother. When the father has limited means and the mother a substantially higher standard, the child would be placed in a "Cinderella” role in the family unit. Since the Legislature deems it in the best interest of an out-of-wedlock child to be within the relative life style of the members of his household, section 513 of the Family Court Act provides a reasonable and rational test.
The situation of a legitimate child under article 4 is different than that of a natural child under article 5. The child in an article 4 proceeding has usually lived in a household which included both of his parents. Thus the legislative reason for allowing the child to receive support according to his father’s standard of living is to maintain that child’s standard of living. Otherwise, the child would have tó cope with adjusting to another economic standard of living in addition to dealing with the emotional crises that confront that child due to the breakup of his family. The legislative interest in easing the burdens of a child from a separated family is a valid concern of the government, in light of its duty to act in the best interests of the child. Therefore, the distinction between the support awards test of sections 413 and 513 of the Family Court Act cannot be considered either "patently arbitrary” or irrationally related to a governmental interest.
Although the father’s standard of living should be given consideration in determining his ability to pay, an out-of-wedlock child is not allowed to receive support determined solely on the father’s standard of living. Section 513 of the Family Court Act as well as section 545 thereof were executed in conformity with the teaching of the Schaschlo v Taishoff case (Committee Comments, McKinneys Cons Laws of NY, Book 29A, Family Ct Act, § 545, p 494, supra).
The test in Schaschlo consists of three factors which must be weighed; the welfare of the child, the financial capacity of the parents, and the station in life of the mother. Schaschlo v Taishoff goes on to say that the mother’s station in life is not *287 a term of limitation. Haag v Barnes (11 AD2d 430, affd 9 NY2d 554) declares that the main consideration of the Schaschlo test is the welfare of the child. Matter of Nardone v Coyne (supra), which was decided subsequent to the enactment of the Family Court Act, though placing emphasis on the father’s ability to pay due to the circumstances in that case, reiterates the Schaschlo and Haag holdings. The court goes on to state that the child "is entitled to be reared in accordance with the father’s financial ability”. In light of the distinctions between sections 513 and 413 of the Family Court Act, this statement does not mean that the natural child is entitled to the same standard of living as a child born in wedlock. Rather it stands for the proposition that greater latitude should be given in determining the amount of support that the child is entitled to when there is great disparity between the standards of living of the parents.
III. The Determination of Support Through the Facts Presented
Child support is determined by an analysis of the child’s needs for necessary shelter, food, clothing, care, education and medical attention. In this case the petitioner requests that the father should contribute a greater share for the shelter of his son than one third, the apportion determined by the size of the family. To support this argument she claims that she has willed the house to the child and that her other son is financially independent and pays a reasonable sum for his room and board. The fact that the petitioner has determined to grant a gratuity upon the subject child is not grounds to make the respondent pay more to secure that gratuity. Furthermore, the sum that the petitioner’s other son pays for shelter and food to the family would be equivalent to the sum petitioner requests that the child in question pay into the family for the cost of shelter alone. Therefore, the court finds that the cost of shelter of the child in question is one third of the total family shelter bill.
On the cost of food the petitioner did not present specifics. She did testify that the cost of feeding the entire family averages to $60 per week. The petitioner claims that due to his age and his activities the child in question eats more than she and the child’s half-brother. The court finds this is not unreasonable. Therefore, the court considers $30 per week to be a reasonable estimate of the cost of feeding this child due to his age and activity.
*288 The petitioner’s unrebutted allegation that the clothing costs of the child are approximately $368 per year is taken by the court to represent the reasonable cost of that necessity.
In regard to the question of whether the father should be responsible for private schooling, this court recognizes the principles of Matter of Kotkin v Kerner (29 AD2d 367). That case teaches us that while a father is under no duty to provide for private education of his child, the Family Court has the power to order him to do so (p 369). That court then applied the Matter of Weingast v Weingast (44 Misc 2d 952) rationale that there is no hard and fast rule when the father will be required to pay for private schooling; therefore the court will determine it proper when the circumstances warrant it (Matter of Kotkin v Kerner, supra; Matter of Weingast v Weingast, supra). Courts have recognized that to make such an order there must be a positive showing of private education being in the best interests of the child, not only the ability of the father to pay for such education (Matter of F.L.C. v E.W.P., 49 AD2d 263, supra; Matter of G. v G., 42 AD2d 555; Matter of Kotkin v Kerner, supra). In the present case it was shown that the child desired to go to private school. Since enrolling in private school the child has been shown to respond favorably to this opportunity by achieving academic awards, becoming active in school and community affairs, and improving his conduct in and out of school. Since the child has been shown to respond favorably to private school, and there is no question of the ability of the respondent to pay for it, the court will include the cost of the tuition of the private school in determining the amount of the support order.
The petitioner claims an additional sum of $1,989 per year for the costs of incidentals. The respondent contends such an amount is unreasonable for allowances, vacation and entertainment for a child of 13 years. The court finds that this sum is not reasonable, but does allow $1,040 per year for incidental expenses.
There was testimony that the dental needs of the child in question average $50 per year. In regard to the medical needs of the child, he presently has no unusual expenses. However, the petitioner requests an order making respondent liable for all medical costs of the child. The court denies the request finding it a better policy to determine specifically the liability of the respondent. (Matter of Bolatin v Belfer, 38 AD2d 574.) Therefore, the court determines that $100 per year is an *289 adequate amount to be used to defray the cost of medical treatment.
It is therefore determined that the reasonable needs of the child for support and education are less than the parties voluntarily stipulated at the time of the order of the court in 1974. Therefore, the petitioner has failed to prove that the needs are substantially greater at this time than was the case at the time of the original order.
Ordered, petitions dated July 16, 1974, May 13, 1975 and March 31, 1976 are and hereby are denied.