MARIA CARMEN MURILLO, PLAINTIFF-RESPONDENT, v.
MARIO PEREZ, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted November 13, 1985—Decided December 10, 1985.

Before Judges PRESSLER, DREIER and GRUCCIO.
*Maurice J. Langer,* attorney for appellant.

*Sheldon G. Weinstein*, attorney for respondent (*Brian W. Banasiak*, on the brief).

The opinion of the court was delivered by

PRESSLER, P.J.A.D.

Defendant Mario Perez appeals from a jury verdict rendered on a trial *de novo* in the Law Division adjudicating his paternity of R.M., a child born to plaintiff Maria Carmen Murillo in October 1979. The appeal raises novel questions respecting the application and construction of the New Jersey Parentage Act, *N.J.S.A.* 9:17–38 to 59, enacted on January 21, 1983, subject to an effective date of 120 days thereafter. *See L.* 1983, *c.* 17, § 24. The primary question presented involves the interpretation of *N.J.S.A.* 9:17–50(e), which bars the defendant-putative father from introducing proof that another man had access to the mother at the probable time of conception unless he also introduces blood and genetic test results which do not exclude the possibility of that "other man's" paternity and, if the "other man" is subject to the jurisdiction of the court, unless that "other man" is joined as a party to the action.

This action was commenced sometime after the birth of the child when plaintiff's husband, from whom she has since been divorced, learned that he was not the child's father although he and plaintiff were living together at the time of the conception and birth.[1] Insofar as we are able to determine from the inadequate record filed on this appeal, plaintiff, after her separation from her husband, sought public assistance for the support of the child, and this action was filed at the behest of the Union County Welfare Board after she had identified defendant as the father. There is no question that the action was brought pursuant to the former so-called Bastardy Act, *N.J.S.A.* 9:17–1, *et seq.*, repealed by *L.* 1983, *c.* 17, § 23. Pursuant to

---

[1] We gather from the record that the husband's paternity has been ruled out by appropriate blood testing.

that Act, a paternity action was tried in the first instance by a judge of the juvenile and domestic relations court sitting without a jury and was subject to appeal by way of trial *de novo* in the Law Division by a jury, if demanded. See also the then applicable rules of court, *R.* 4:74-6 (appeals in bastardy proceedings) (deleted effective September 12, 1983), and *R.* 5:5-9 (bastardy proceedings) (deleted December 31, 1983), replaced by *R.* 5:14 (proceedings to determine parent-child relationship) (effective December 31, 1983).

Following the former legislative and court-rule scheme, this action was first tried in March and April 1983 by a judge of the juvenile and domestic relations court who adjudicated defendant's paternity prior to the effective date of the Parentage Act. Defendant exercised his right to a *de novo* trial by jury, and trial commenced on September 6, 1983, after the effective date of the Act. The jury verdict here appealed from finding defendant to have fathered the child was returned on September 14, 1983. Thus, this *de novo* trial commenced prior to the deletion of *R.* 4:74-6 but was concluded thereafter.[2]

At trial plaintiff testified that she had had sexual relations with defendant on January 9, 1979, a date which her treating obstetrician, who rendered prenatal care starting in February 1979, testified was within the period of probable conception. Defendant was no stranger to plaintiff. He was the husband of her cousin, and they had known each other for many years. The critical evidence, however, was the testimony of Dr. G.

---

[2]The evident purpose of the deletion was the recognition that the adoption of the New Jersey Parentage Act had rendered obsolete both the form and designation of bastardy proceedings. *See N.J.S.A.* 9:17-49 providing for a single trial, by jury if requested. Moreover, shortly after the effective date of the Parentage Act, the juvenile and domestic relations court was abolished by constitutional amendment approved at the November 1983 general election. The jurisdiction of that court, including, of course, its jurisdiction over parentage matters, devolved upon the Superior Court and was allocated to the then created Family Part of the Chancery Division. See also the comprehensive rule amendment of Part V, effective December 31, 1983.

Lynn Ryals, the holder of a Ph.D. degree in biological sciences and the Associate Director of the Department of Paternity Evaluation at Roche Biomedical Laboratories in Burlington, North Carolina, a leading facility conducting blood testing in paternity suits. Based on HLA (human leucocyte antigen) tests, six red blood cell tests, and a red blood cell enzyme test, all performed on blood samples provided by plaintiff, defendant and the child, Dr. Ryals was of the opinion that there was a 99.15% probability of defendant's paternity.

Defendant produced no controverting expert opinion. He relied on his own denial of plaintiff's testimony respecting their intimacy and on proof that two other men could have been the father. The first of these was a Jose Gil Muela, who died on June 3, 1980. Muela's son Gil, a friend of defendant's and called by him as a defense witness, was permitted to testify, pursuant to *N.J.Evid.R.* 63(32), that his father Jose had told him at a family Easter celebration in 1979 that plaintiff was pregnant and that he, Jose, was the father. Another defense witness, Pedro Suarez, also a friend of defendant's, testified that on three occasions during the probable week of conception he had had sexual relations with plaintiff in a Union County motel. The testimony of Suarez was completely uncorroborated, and plaintiff denied even knowing him. The jury's verdict of paternity was obviously predicated on its acceptance of Dr. Ryals' testimony and its rejection of the credibility of the defense witnesses.

On this appeal defendant asserts that he is entitled to a new trial by reason of the fact that Pedro Suarez had not been made a party to the action and that no blood or genetic tests had been performed which excluded the possibility of his paternity. In making this argument he relies on *N.J.S.A.* 9:17–50(e), a provision having no analogue in predecessor legislation, stipulating that:

> In an action against an alleged father, uncorroborated evidence offered by him with respect to a man who is not subject to the jurisdiction of the court concerning his sexual intercourse with the mother at or about the probable time

of conception of the child is admissible in evidence only if the other man has undergone blood tests or genetic tests, the results of which do not exclude the possibility of his paternity of the child and which tests are made available to the court. A man who is identified and is subject to the jurisdiction of the court shall be made a party in the action.

As we understand defendant's somewhat inartful argument, he is apparently urging that it was the trial court's obligation to have ordered the joinder of Suarez as a party after the jury trial had commenced and to have ordered him to submit to appropriate blood tests. Plaintiff's response to this argument includes the assertion that the Parentage Act as a whole does not apply to this proceeding.

As we have suggested, the New Jersey Parentage Act, modeled on the 1973 Uniform Parentage Act, 9A *U.L.A.* at 579, effected comprehensive and broad-reaching substantive and procedural changes in paternity litigation. *See generally Statement of The Assembly, Judiciary, Law, Public Safety and Defense Committee on Senate Bill No. 888*, reprinted following *N.J.S.A.* 9:17–38. The first question before us is whether the Act applies to an action pending on its effective date and particularly to one which had already been initially tried by the juvenile and domestic relations court under the former legislation and applicable court rule.

 Defendant's claim of applicability is not based on any principle of statutory construction but rather on the assertion that the parties had so stipulated at the *de novo* jury trial. He directs us, however, to no record indication of any such stipulation, and we are unable ourselves to find any. Although there was mention of the Act once or twice during the trial, we cannot construe these references as a stipulation of applicability. Our own analysis of applicable principles suggests, however, that as a theoretical matter, there may be merit to defendant's claim of applicability.

It is well settled as a general rule that while legislation affecting substantive rights is ordinarily construed as prospective in effect, statutes which primarily affect procedural and

remedial matters apply to pending actions unless vested rights of parties would be impaired or unless the legislature has itself otherwise indicated. *See In re Grossman*, 127 *N.J.Super.* 13, 35 (App.Div.1974), certif. den., 65 *N.J.* 292 (1974). *See also State, Dept. of Environ. Protect. v. Ventron Corp.*, 94 *N.J.* 473 (1983); *Feuchtbaum v. Constantini*, 59 *N.J.* 167, 172 (1971); *Eyre v. Bloomfield Sav. Bank*, 177 *N.J.Super.* 125, 129 (Ch. Div.1980). We recognize that the Parentage Act is, in significant degree, procedural and remedial in nature and hence that the rule of applicability to pending actions would normally apply.

The problem with applicability here, however, is that at no time after the juvenile and domestic relations court judgment did either party suggest in any way that the Act would apply to what may well have been the last appeal by *de novo* trial in the State. Neither they nor the court made any effort to consider the appropriateness of appointing a guardian *ad litem* for the child pursuant to *N.J.S.A.* 9:17–47, or to obtain the court intake service consent conference mandated by *N.J.S.A.* 9:17–48, or in any other way to comply with the substantive or procedural provisions of the Act. Indeed, even now defendant does not urge that the Act as a whole applied to the trial *de novo* but only that *N.J.S.A.* 9:17–50(e) applied. We need not therefore, and we do not, consider the general applicability of the Act to appeals by trial *de novo* conducted after its effective date. We are, however, of the view that defendant's basic misapprehension of the import of *N.J.S.A.* 9:17–50(e) requires our comment on that section. We have concluded that even if that section were to have applied to this trial, nothing in its purpose or provision can be reasonably construed, under the circumstances here, as affording defendant the right to a new trial now.

*N.J.S.A.* 9:17–50(e), as we have indicated, imposes strict conditions on the admissibility of proof offered by defendant that another man had access to the mother during the probable time of conception. If that other man is not subject to the jurisdic-

tion of the court, otherwise uncorroborated evidence of access is admissible only if blood and genetic test results which do not exclude the possibility of paternity are first made available to the court. If that other man is subject to the jurisdiction of the court, he is required to be made a party to the action. We are persuaded that party status is required for two evident purposes. The first is to assure the court's authority to order the "other man" to submit to blood and genetic testing and its consequent authority to bar otherwise uncorroborated proof of access to the mother by a man whose possibility of paternity is scientifically excluded. *See N.J.S.A.* 9:17–51. Moreover, if the paternity of the "other man" is not excluded by such testing, his party status would enable an adjudication of paternity against him in the same action, thereby obviating the burden, expense and potentially inconsistent results of individual trials. Thus, access proof is conditioned upon scientific evidence of the possibility of paternity whether or not the "other man" is subject to the jurisdiction of the court.

The reason for this restriction on uncorroborated proof of access is explained by the Uniform Law Commissioners' Comment to Section 14(c) of the Uniform Parentage Act which *N.J.S.A.* 9:17–50(e) follows almost verbatim.[3] The Comment states that Section (c) addresses

> ˜ ˜ ˜ the problem of perjured testimony concerning alleged sexual access to the mother offered by other men on behalf of the alleged father. It is recognized that in rare cases, these provisions may result in the exclusion of "honest" evidence. However, the Committee concluded that this is outweighed by the need for closing the door to the wanton attacks on the mother's character that

---

[3]The primary difference between the New Jersey and the Uniform versions is that the latter requires testing as an unqualified condition of admissibility of access evidence. The New Jersey version requires testing as a condition of admissibility only where the access evidence is otherwise uncorroborated. Because there was no corroboration of the Suarez testimony in this case, we need not consider whether the court has the power to order testing and party status where there is corroboration. We note, however, that the exercise of such power would be consistent with the purpose of the provision.

characterize too many paternity suits under present laws. [9A *U.L.A.* at 606–607]

*And see Doe II v. Roe II,* 3 *Hawaii App.* 233, 647 *P.*2d 305, 308 (Ct.App.1982). We are satisfied that the New Jersey Legislature's adoption of this provision reflects its agreement that as a matter of public policy the mother is entitled to protection from uncorroborated charges of promiscuity.[4]

■ It is therefore clear to us that if *N.J.S.A.* 9:17–50(e) applied to this action, the "access" testimony of Pedro Suarez should have been excluded altogether in the absence of his party status and in the absence of the proffer of blood or genetic test results not excluding the possibility of his paternity. Indeed, we are satisfied that defendant's trial tactics here were precisely those condemned by this provision of the Parentage Act. He offered no corroboration of Suarez's access testimony although some corroboration might be presumed to have been available since the intimacy was alleged to have occurred in a place of public accommodation, required to keep a guest register. More significantly, not only was there no proffer of blood or genetic test results, but there was no motion made by defendant, before or at trial, that such tests be ordered or that Suarez be made a party for the purpose of being required to submit to such testing. Rather, defendant's attorney built his summation on the foundation of plaintiff's failure and that of her expert witness to have excluded the possibility of Suarez's paternity. It was not, however, plaintiff's obligation to have done so. It was, to the contrary, defendant's obligation to have adduced scientific proof of the possibility of paternity as a condition to the admissibility of Suarez's uncorroborated testimony respecting access. We cannot, therefore, avoid concluding that blood or genetic testing of Suarez was the last thing in the world that defendant wanted. If he had wanted it and if

---

[4] *See also N.J.S.A.* 9:17–50(d), following section 14(b) of the Uniform Act, which absolutely prohibits evidence respecting access to the mother at any time other than the probable time of conception.

Suarez had refused voluntarily to submit to testing, defendant need only have asked the court for an order joining Suarez and for the ancillary relief of an order requiring Suarez to submit to testing.

Since we are persuaded that *N.J.S.A.* 9:17–50(e) was intended as an antidote to the trial tactics here employed by defendant, we will not relieve him of the consequences thereof, particularly since he had the benefit of the uncorroborated testimony which the statute in these circumstances bars and since he does not yet either proffer Suarez's test results or seek to join him as a party.

There nevertheless remains a procedural question which we must address for the future guidance of bench and bar. As we have pointed out, *N.J.S.A.* 9:17–50(e) requires the "other man" to be made a party to the action if he is subject to the court's jurisdiction and conditions the admissibility of uncorroborated proof respecting his access to the mother upon that party status and his consequent blood and genetic testing.[5] We note, however, that *N.J.S.A.* 9:17–47, identifying necessary parties, does not include another man named by the defendant as having had access to the mother during the probable period of conception. Nor does *R.* 5:14–1, which implements the Act, make reference to the party status of such an "other man." We are nevertheless satisfied that it is the defendant's pretrial obligation to apply for an order joining the "other man" as a party. Obviously, joinder cannot ordinarily be permitted in the middle of a trial where defendant, as is the case here, has long before then intended to produce the access evidence. More-

___

[5]We have considered whether an "other man" who is subject to the jurisdiction of the court should be permitted to testify to his access to the mother without being made a party if he has voluntarily submitted to appropriate blood and genetic testing, the results of which do not exclude the possibility of his paternity. We have rejected this notion since we are persuaded that, where there is more than one candidate for paternity, the statutory intent is to avoid successive actions against each but, rather, to require a single action in which all are joined.

over, while a timely pretrial motion can clearly be made pursuant to *R.* 4:28–1, we would recommend amendment of *R.* 5:14–1 to prescribe a specific pretrial motion procedure for this circumstance.

One final matter requires our attention. Defendant's second ground of appeal is the alleged prejudice to him which occurred at the conclusion of Dr. Ryals' testimony when he, Ryals, was observed by defendant's attorney in a verbal exchange with a juror. This situation was immediately brought to the attention of the trial judge, who ascertained, on the record, that the conversation between the witness and the juror had been confined to a question by the juror of the expert respecting the expert's flight back to North Carolina. The occurrence was untoward, but it was obviously innocuous and does not constitute reversible error. *See Kavanaugh v. Quigley,* 63 *N.J.Super.* 153 (App.Div.1960).

Affirmed.