In the Matter of KATHY G. J., Appellant, v ARNOLD D., Respondent.

Second Department, April 7, 1986

### APPEARANCES OF COUNSEL

*Ira Richard Bennett (Lawrence H. Bloom* of counsel), for appellant.

*Herschocopf, Stevenson, McConnell & Tannenbaum (Samuel Tannenbaum* of counsel), for respondent.

*Robert Abrams, Attorney-General (Harvey M. Berman, Mary-ellen Weinberg* and *Robert J. Schack* of counsel), in support of the constitutionality of Family Court Act §§ 513 and 545.

### OPINION OF THE COURT

NIEHOFF, J. P.

On May 21, 1980, in a paternity proceeding in the Family Court, Queens County, before Judge Bruce M. Kaplan, the respondent, a world-famous entertainer, (a) was adjudged to be the father of petitioner's out-of-wedlock child Jennifer, who was born in October 1976, (b) was directed to pay temporary support, including a lump-sum payment of $5,000, and (c) the

matter was set down for a hearing on support. This court affirmed the order entered on that determination in *Matter of Kathy G. J. v Arnold D.* (80 AD2d 896).

After the hearing on support, which lasted 10 days and produced a transcript over 800 pages long, Judge Kaplan rendered a decision in which he determined the weekly needs and expenses of the child as follows:

| | |
|---|---|
| Shelter | $104.00 |
| Food | 50.00 |
| Clothing | 48.00 |
| Entertainment | 10.00 |
| Dining out | 12.00 |
| Travel | 25.00 |
| Parties | 8.00 |

$257.00 per week or approximately $13,364.00 per year.

In addition, the Judge, relying upon the evidence which established that (1) the child is intellectually gifted with a superior academic potential and the capacity to benefit from private school education, and (2) the father has the means to provide for such an education, ruled that this is a case where "special circumstances * * * justify the conclusion that the cost of private school education is a proper element of support for Jennifer". He went on to determine that a maximum of $12,000 per year should be expended for private school expenses, including transportation, books, meals, contributions, activities fees, charges and uniforms.

The father was ordered to pay 95% of the child's total weekly expenses and 95% of the cost of the private school education. The mother was to be responsible for the remaining 5% of Jennifer's expenses.

Thus, the father was charged with weekly support for eight-year-old Jennifer of $244.15 per week (95% of $257 per week), and a maximum of $11,400 per year or approximately $219.23 per week for private school expenses (95% of $12,000 per year), for a total of $24,095.80 per year, or approximately $463.38 per week.

Finally, the father was directed to furnish comprehensive medical, dental and prescription insurance coverage for the infant, and to pay 95% of any deductible.

In arriving at the foregoing decision Judge Kaplan wrote:

"The Court will make its award of child support pursuant to F.C.A. §§ 513 and 545 based on a consideration of:

"1) the income and expenses of Respondent.

"2) the income and expenses of the child, and

"3) the income and expenses of the Petitioner.

"It will utilize F.C.A. §§ 513 and 545 as its exclusive criteria.

"The Court rejects Petitioner's oft recurring urgings that there can be no permissible distinction between the *manner* in which support is fixed for a marital and a non-marital child". (Emphasis supplied.)

On this appeal, the petitioner mother attacks the decision and order of the Family Court on numerous grounds which will be dealt with hereinafter.

At the outset, we note that the petitioner's counsel opens and closes his brief with a rather scathing attack upon the Trial Judge's fairness. Initially he argues, *inter alia,* that the court was preoccupied with marriage and "honored social traditions", as a consequence of which it was blinded "from a full and fair consideration of *the rights of the child* in this instant proceeding". After then launching a lengthy assault on virtually every aspect of the decision, he winds up his argument with the assertion that "the predisposition and preoccupation of the Trial Court with distinguishing the rights of 'non-marital' children from those of 'marital children', and the bias of the Court against petitioner and her counsel resulting from attempts to abrogate all distinctions and to preserve the rights of the child, did wrongfully affect the final determination of support". The brief ends with the conclusion that the orders appealed from should be reversed, and the matter should be remitted to the Family Court for further proceedings before a different Judge.

After a careful and objective reading of the record and decision of the trial court, we are satisfied that the claim that Judge Kaplan was guilty of bias is unfounded. Any such charge must be based on an out-of-context reading of certain statements made by the Judge in the course of his decision, because when the decision is read in its entirety, it is abundantly clear that Judge Kaplan made no moral judgments in reaching his decision, and did not treat Jennifer unfairly. On the contrary, he demonstrated a thoughtful concern for the welfare of the child. While we have concluded that his dispositional order should be modified in several particulars, that conclusion does not result from any belief that he was biased in this proceeding, but from a difference of opinion as to the manner in which certain issues should be resolved.

Lest there be any misunderstanding, we wish to state unequivocally that in arriving at the conclusions which follow, we, too, pass no moral judgment on either the petitioner or the respondent. We recognize that our foremost concern in addressing the issues raised on this appeal must be to assure the fair treatment of Jennifer, who had no control as to the circumstances of her birth, or the lack of marital status of her parents.

We turn now to an examination of the statutes which govern the obligation of parents to support their children.

New York law prescribes parental support of the out-of-wedlock child by statutory provision separate and different from that for the child born of a marriage. Thus, Family Court Act § 413 concerns parental support of marital children and reads as follows:

"1. Except as provided in subdivision two of this section, the parents of a child under the age of twenty-one years are chargeable with the support of such child and, if possessed of sufficient means or able to earn such means, may be required to pay for such child's care, maintenance and education a fair and reasonable sum according to their respective means, as the court may determine and apportion. The court shall make its award for child support after consideration of all relevant factors, including: (i) the financial resources of the parents and those of the child; (ii) the physical and emotional health of the child, and his or her educational or vocational needs and aptitudes; (iii) where practical and relevant, the standard of living the child would have enjoyed had the family remained intact; (iv) where practical and relevant, the tax consequences to the parties; and (v) the non-monetary contributions that the parents will make toward the care and well-being of the child.

"2. Nothing in this article shall impose any liability upon a person to support the adopted child of his or her spouse, if such child was adopted after the adopting spouse is living separate and apart from the non-adopting spouse pursuant to a legally recognizable separation agreement or decree under the domestic relations law. Such liability shall not be imposed for so long as the spouses remain separate and apart after the adoption".

On the other hand, Family Court Act §§ 513 and 545 concern the support of children born out of wedlock and provide:

"Each parent of a child born out of wedlock is liable for the necessary support and education of the child and for the

child's funeral expenses. If a parent dies, an order of support or a judicially approved settlement made prior to that parent's death shall be enforceable as a claim against the deceased parent's estate in an amount to be determined by the surrogate's court not greater than is provided in said order or settlement, having regard to the age of the child, the ability of the surviving parent to support and educate it, the amount of property left by the deceased parent and the number, age and financial condition of those other persons legally entitled to support by the deceased parent during his or her lifetime" (Family Ct Act § 513).

"In a proceeding in which the court has made an order of filiation, the court shall direct the parent or parents possessed of sufficient means or able to earn such means to pay weekly or at other fixed periods a fair and reasonable sum according to their respective means as the court may determine and apportion for such child's support and education, until the child is twenty-one. The order shall be effective as of the date of the application for an order of filiation, and any retroactive amount of support shall be paid in one sum or periodic sums as the court shall direct, taking into account any amount of temporary support which has been paid. The court shall direct such parent to make his or her residence known at all times should he or she move from the address last known to the court by reporting such change to the support collection unit designated by the appropriate social services district. The order may also direct each parent to pay an amount as the court may determine and apportion for the support of the child prior to the making of the order of filiation, and may direct each parent to pay an amount as the court may determine and apportion for (a) the funeral expenses if the child has died, (b) the necessary expenses incurred by or for the mother in connection with her confinement and recovery, and (c) such expenses in connection with the pregnancy of the mother as the court may deem proper. Subsequently, for good cause shown, support may be continued in the discretion of the court" (Family Ct Act § 545).

█ It will be seen that the statutes regarding marital and nonmarital children are analogous, in that both statutory schemes call for parental support of children in a fair and reasonable sum, according to the parents' respective means. They differ in that section 413 (relating to a marital child) includes a list of factors to be considered by the court in making its award of child support. However that may be, the

factors listed in Family Court Act § 413 for consideration by the court do not dictate that marital children necessarily receive a greater level of support than nonmarital children. These factors merely guide the court in assessing the relevant circumstances before awarding support to the child of a marriage. Family Court Act §§ 513 and 545 impliedly call for a similar assessment of relevant circumstances when determining the amount of support for a child born out of wedlock, although no enumerated factors are listed in those statutes, as in section 413.

■ In reviewing the statutes regarding support of marital and nonmarital children, we find them to be substantially the same. The only potentially significant difference between them is the reference in Family Court Act § 413 to the marital standard of living, which is one of the listed factors to be considered in fixing the support of a marital child "where practical and relevant".

The reason for this distinction is an important, valid and constitutional one. Using the marital standard of living as a guidepost in determining a marital child's support decreases the possibility that such a child will have to face the additional trauma of adjusting to a new standard of living, while adjusting to all of the other changes engendered by the breakup of a marriage.

As Judge McLaughlin of the Family Court of Onondaga County wrote in *Ellen N. v Stuart K.* (88 Misc 2d 280, 286): "The situation of a legitimate child under article 4 is different than that of a natural child under article 5. The child in an article 4 proceeding has usually lived in a household which included both of his parents. Thus the legislative reason for allowing the child to receive support according to his father's standard of living is to maintain that child's standard of living. Otherwise, the child would have to cope with adjusting to another economic standard of living in addition to dealing with the emotional crises that confront that child due to the breakup of his family. The legislative interest in easing the burdens of a child from a separated family is a valid concern of the government, in light of its duty to act in the best interests of the child. Therefore, the distinction between the support awards test of sections 413 and 513 of the Family Court Act cannot be considered either 'patently arbitrary' or irrationally related to a governmental interest".

However, in the case of most nonmarital children, as in the

case at bar, consideration of "the standard of living the child would have enjoyed had the family remained intact" is neither "practical" nor "relevant" (Family Ct Act § 413) since there was never any prior family relationship and concomitant standard of living to use as a basis for comparison when awarding support. Therefore, this consideration, while proper in determining the amount of support for a marital child "where practical and relevant", obviously should play no part in determining the amount of support for a nonmarital child whose parents never lived together.

This is not to say that Family Court Act § 545 precludes the consideration of this or any other factor under appropriate circumstances. In fact, in cases such as *Matter of Carolyn C. v Frank G.* (106 Misc 2d 510), where the parents of a nonmarital child established a "nonmarital family" and fashioned a standard of living together, this standard of living was properly taken into account by the court in determining what was a "fair and reasonable sum" for the child's support notwithstanding the nonmarital status of the child.

Although marital and nonmarital children are both to be supported in a fair and reasonable sum, it cannot be overlooked that when formulating an order of support for an out-of-wedlock child a vexing element is always present and must be confronted. As the distinguishing characteristic of the out-of-wedlock child's status is the absence of a legal relationship between the mother and the father, the court is called upon to fix child support in such amount as meets the child's needs while not raising the mother's standard of living, for to raise her standard of living through the vehicle of child support would constitute the imposition of an unauthorized obligation on the part of the father toward the mother. In *Schaschlo v Taishoff* (2 NY2d 408, 411-412), our Court of Appeals recognized the existence of this problem and wrote: "We find nothing to indicate * * * that the 'station in life of its mother' was intended to serve as a fixed and invariable maximum, rendering immaterial the father's means except insofar as they suffice to meet this maximum. If such were the case it would mean that an illegitimate child born to an impoverished woman or one of obviously low station would have to suffer the added misfortune of a meager support award, sufficient only to provide for his needs at that humble level, regardless of the father's ability to afford a comfortable or advantageous existence * * * Nor is the father's financial ability the sole criterion. As the statute makes plain, a court,

in fixing the measure of support, must enter an order taking into account the mother's station in life and the father's financial ability".

█ In short, a fair balance must be struck, taking into consideration all relevant circumstances. As we read them, both Family Court Act §§ 413 and 545 seek, in substance, to achieve the same end, that is, to provide for the needs of the particular child, whether marital or nonmarital, according to the circumstances of the parents and the child. Simply because another child of the same father, in different circumstances, receives more support, does not mean that equal protection has been denied by the statutes; it only means that the relevant circumstances differ. Under New York's statutory scheme, it is entirely possible that marital children within the same family could receive different levels of support due to their special needs, and the surrounding circumstances. So, too, marital and nonmarital children of the same father may receive different dollar amounts of support due to their particular circumstances. The circumstances dictate the results, not the statutes, and there is a legitimate basis for the differing treatment. Equal protection of the law does not mandate absolute equality of treatment. It only requires that all persons in the same class be treated alike under like circumstances and conditions. Jennifer was entitled to receive support in accordance with her particular needs. She was not denied equal protection of the law merely because she did not automatically receive the same level of support as the respondent's other four children.

After acknowledging that "the Legislature utilized different words in the operative statutes relating to 'legitimate child support' and 'illegitimate child support,' " the petitioner takes issue with Judge Kaplan in these words: "The Court below interpreted the difference as indicative of *separate standards,* concluding that JENNIFER D * * * is not entitled to the same level of support from her natural father as she would have been had the same man been married to her mother". In a word, petitioner attacks the order appealed from because Judge Kaplan disagreed with petitioner's contention that respondent "has a duty to provide for his fifth child, JENNIFER, *in the same manner* and *to the same extent* as he provides for his other four children".

In arriving at an award of child support for Jennifer, Judge Kaplan considered those factors which were relevant to Jennifer's circumstances. He concluded that her needs and circum-

stances were the governing factors, and that she was not necessarily entitled to be supported in the same manner, and to the same extent as the respondent's marital children. We can find no error in that conclusion.

The petitioner and the respondent never lived together. Their child Jennifer never became accustomed to the standard of living which the respondent's income as a world-famous entertainer could provide. Therefore, Judge Kaplan's decision did not deprive her of something to which she had, by circumstances, become accustomed. Rather, the decision provided for her support according to her "needs", while keeping in mind her father's ability to pay. We note the following excerpts from Judge Kaplan's opinion which demonstrate his awareness of his obligation to adequately provide for Jennifer's needs in the light of the father's ability to pay:

"Lest there be any misapprehension of the Court's position, this Court wishes it to be entirely clear that the amount awarded for Jennifer's support was not diminished by as much as a penny because Respondent is presently supporting his 4 marital children * * *

"[It] is certain that Jennifer will receive a level of support that more than meets a level that is fair and reasonable."

Nor did Judge Kaplan punish Jennifer because of the petitioner's modest station in life and the fact that the petitioner has been receiving public assistance since 1976. This is clear from the following quotation from his opinion.

"It is understandable that Petitioner wished to avoid the dilemma of having the child's needs implicitly measured by the amounts she was able to expend given her means which are extraordinarily modest relative to those of Respondent.

"It has long been the law of the state that the child's needs were not to be measured solely by the mother's means, a precept that has been applied with ever increasing vigor. Indeed the teachings of *Schaschlo v Taishoff*, 2 N.Y.2d 408; and *Nardone v Coyne*, 23 A.D.2d 819 (4th Dept., 1965), aff'd 18 N.Y.2d 626 are part of the mainstream of the evolving and expanding rights of non-marital children.

"The fact that the custodial parent of a non-marital child lacks the financial resources to provide adequately for the child's needs does not mean that those needs do not exist. Rather, it means that the custodial parent is presently incapable of meeting those needs absent significant contribution from the non-custodial parent.

"While it is incumbent on Petitioner to demonstrate Jennifer's needs, it is not necessary for her to do so solely through proof of expenses actually incurred. It is enough that Petitioner prove by competent evidence that Jennifer has particular needs, and what sums are necessary to meet them".

Indeed, the amounts fixed by Judge Kaplan for Jennifer's needs, amounting to $13,364 per year, plus medical insurance and $12,000 per year for private school, are abundant evidence that in arriving at his decision he was not influenced by the mother's modest station in life.

■ Based on the evidence contained in the record, we are satisfied with the fairness of Judge Kaplan's determination that Jennifer is entitled to $257 per week in support, a maximum of $12,000 a year for private schooling, and health insurance coverage. However, on the record before us we are disinclined to find that the petitioner should be held responsible for 5% of Jennifer's expenses, including 5% of any medical insurance deductible. Although it may well be that petitioner, who is now on public assistance, could obtain some form of employment, the record discloses that she has not been gainfully employed for some years and that she has been devoting herself to the care of Jennifer. We do not believe we should ignore the lack of financial means of the mother, and engage in speculation as to her potential earning power, or ignore her nonmonetary contributions in the rearing of Jennifer. It would appear to us to be unfair at this juncture to require her to provide 5% of Jennifer's support, especially in light of the respondent's high income. We also deem it unfair that Jennifer's choice of schools would be limited by the fact that petitioner would have to provide 5% of the cost of her education. Therefore, we conclude that, under these circumstances, the respondent should provide 100% of Jennifer's support.

■ It is argued that the Family Court failed to properly include the extracurricular and cultural needs of Jennifer as comprising part of the child's "needs". The question is asked: "Is she not entitled to piano lessons, ballet classes, singing lessons, art classes, etc?". The charge is also made that "[s]imilarly offensive was the failure of the court below to direct Respondent to pay summer camp and related transportation expenses in order to assure JENNIFER an opportunity to develop on a social level with members of her own age group in [a] recreational setting". There is also the complaint that the respondent was not directed to obtain a policy of insurance on

his life for the benefit of Jennifer, or to provide for college expenses.

Examination of the record discloses that the petitioner never requested the foregoing items nor offered any testimony as to their amounts or even their necessity. That being so, we decline to include those items in Jennifer's support award. Insofar as Jennifer's college education is concerned, this can be provided for at a later time by way of modification, if and when Jennifer expresses a desire to continue her education.

Several other items warrant discussion. The Family Court should have ordered reimbursement to petitioner of $450 representing costs incurred by the petitioner for Jennifer's attendance at nursery school, and $100 for the cost of educational testing performed to determine Jennifer's intellectual abilities.

We also hold that the effective date of the support determination should be the date of the petitioner's application for an order of filiation, as required by Family Court Act § 545 which provides: "The order [of support] *shall be effective as of the date of the application for an order of filiation,* and any retroactive amount of support shall be paid in one sum or periodic sums as the court shall direct, taking into account any amount of temporary support which has been paid" (emphasis supplied).

Hence, Jennifer is entitled to support retroactive to October 8, 1977, and the matter must be remitted to the Family Court to make the necessary computations.

■ With regard to the petitioner's objections regarding the conduct of the hearing itself, Judge Kaplan's refusal to direct the appearance of the respondent at the support hearing was not error. The information available to the petitioner in the income tax returns and financial statements she received from the respondent, which covered a five-year period, was more than sufficient in determining his ability to support their daughter. Further information was available to the petitioner through the respondent's financial representative, yet she declined to take advantage of this opportunity. In light of the foregoing, petitioner can hardly argue now that the testimony of the respondent himself is necessary to clarify his financial position.

■ Judge Kaplan's refusal to allow pretrial financial disclosure as to the manner in which the respondent provides for his four legitimate children was also proper. Since a child's

support under both Family Court Act §§ 413 and 545 is determined by the particular child's circumstances and the parents' means, the level of support received by the child's siblings, whether legitimate or illegitimate, is irrelevant.

We have considered the petitioner's other contentions and find them to be without merit.

LAWRENCE, EIBER and KOOPER, JJ., concur.

Appeal from an interlocutory order of the Family Court, Queens County, dated June 7, 1984, dismissed. No appeal lies as of right from an intermediate order of the Family Court (Family Ct Act § 1112 [a]).

Dispositional order of the same court, dated June 25, 1984, modified, on the facts, by (1) deleting from the first decretal paragraph the words "95% of $1,785.50, to wit, the sum of $1,696.23,"; and substituting therefor the sum of "$2,335.50" and, after the word "materials" in the first decretal paragraph adding the words "in the sum of $450 with respect to nursery school, and in the sum of $100 with respect to educational testing"; (2) deleting from the second decretal paragraph the words "95% of the sum of" and "to wit, the sum of $244.15,"; (3) deleting the fourth decretal paragraph and substituting therefor a provision that respondent pay retroactive temporary weekly child support in the sum of $257 from October 8, 1977 to June 21, 1984; (4) deleting the sixth decretal paragraph in its entirety; (5) deleting from the seventh decretal paragraph the words "95% of," and (6) deleting from the ninth decretal paragraph the phrase "95%" as it appears on two occasions in that paragraph and substituting therefor the phrase "100%". As so modified, order affirmed insofar as appealed from, with costs to the petitioner, and matter remitted to the Family Court for calculation of the respondent's arrears in temporary weekly child support payments under paragraph 4 thereof, in accordance with the opinion herewith.