JANE DOE VI, Petitioner-Appellee, *v.* RICHARD ROE VI,
Defendant-Appellant

NO. 10832

(FC-P NO. 6501)

APRIL 15, 1987

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY TANAKA, J.

In this action under the Hawaii Uniform Parentage Act (HUPA), Hawaii Revised Statutes (HRS) Chapter 584 (1985), defendant Richard Roe VI[1] (Defendant) appeals the family court decisions (1) adjudging him to be the natural father of the female child born to petitioner Jane Doe VI (Petitioner), (2) ordering him to pay certain sums for the support, maintenance, and education of the child, and (3) awarding

---

[1]In accordance with Hawaii Revised Statutes (HRS) §§ 571-84 and 584-20 (1985), we maintain the anonymity of the parties by use of pseudonyms.

Petitioner attorney's fees and costs. We affirm in part, vacate in part, and remand with directions.

## I. FACTS

On December 19, 1979, Petitioner filed a HUPA petition alleging Defendant to be the natural father of her female child born on April 20, 1979. The petition sought an order requiring Defendant to reimburse Petitioner for the expenses incident to her pregnancy and the birth of the child and for the support, maintenance, and education of the child.

After extensive discovery and a prolonged bench trial,[2] the family court entered its findings of fact, conclusions of law and order adjudging Defendant to be the natural father of the child on March 16, 1984 (Paternity Order).[3]

Thereafter, further discovery was conducted in the support phase of the case. After an evidentiary hearing the family court entered its findings of fact, conclusions of law and judgment on July 15, 1985 (Support Order). The Support Order required Defendant to make specific payments for the support, maintenance and education of the child and to reimburse Petitioner specified amounts for birth related expenses and for past child support.

On July 17, 1985, the family court entered its decision and order awarding Petitioner $154,349 for attorney's fees and costs (Fee Order).

Defendant's notice of appeal is from the Paternity, Support, and Fee Orders.

## II. DETERMINATION OF PATERNITY

In the Paternity Order, based on its findings of fact the family court made the following conclusions of law:

1. Petitioner and Defendant had sexual intercourse with each

---

[2] Jury trials are not provided for in paternity proceedings. *See* HRS § 584-14(a) (1985); *Doe IV v. Roe IV,* 5 Haw. App. 558, 705 P.2d 535 (1985).

The trial commenced on May 2, 1983, and continued for thirty-four full or partial days through July 26, 1983, when the taking of evidence was completed. Thereafter, on December 6, 1983, the family court heard final arguments.

[3] Defendant's appeal from the Paternity Order was dismissed for lack of appellate jurisdiction. *See Doe V v. Roe V,* 5 Haw. App. 610, 704 P.2d 940 (1985).

other on August 4, 1978. Neither Petitioner nor Defendant used any contraceptives during that sexual intercourse. This sexual intercourse resulted in the conception of the subject child.

2. During the period conception could occur, Petitioner did not have sexual intercourse with any men (other than Defendant) who could be the father of the subject child.

3. The subject child was born on April 20, 1979. . . .

4. All of the blood tests and related statistical analyses used herein were properly administered, calculated and interpreted. None of those blood tests and related analyses excluded Defendant as a possible father of the subject child. Further, those tests validly indicate that there is more than a 99% statistical probability that Defendant is the natural father of the subject child.

5. The Court therefore concludes that Petitioner has proven by a preponderance of all of the evidence that Defendant is the natural father of the female child born to Petitioner on April 20, 1979.

Record Vol. 11 at 22-23.

Defendant attacks those conclusions by challenging eleven of the nineteen findings in the Paternity Order.[4] Defendant's challenge is based on the ground that although the findings are supported by substantial evidence, those findings would have been otherwise if the family court (1) had not excluded evidence of Petitioner's sexual relations with other men and (2) had allowed the review and analysis of Petitioner's diaries by handwriting experts. The challenge has no merit.

### A. *Evidence of Sexual Access and HRS § 584-14(b) and (c)*

In HUPA proceedings, evidence regarding sexual access to the mother by men other than the alleged father is restricted. HRS § 584-14(b) and (c) (1985) states:

(b) Testimony relating to sexual access to the mother by an unidentified man at any time or by an identified man at a time other than the probable time of conception of the child shall be inadmissible in evidence, unless offered by the mother.

(c) In an action against an alleged father, evidence offered by

---

[4]Defendant challenges findings of fact nos. A.3, A.5, A.6, A.7, A.9, A.10, A.12, A.13, B.3, B.5, and B.6.

him with respect to a man who is not subject to the jurisdiction of the court concerning his sexual intercourse with the mother at or about the probable time of conception of the child shall be admissible in evidence only if he has undergone and made available to the court blood tests the results of which do not exclude the possibility of his paternity of the child.

During the trial, Defendant sought to elicit expert testimony from Ralph Hale, M.D., on the issue of whether or not Defendant was the child's father based on the date of sexual intercourse, August 4, 1978, testified to by Petitioner. Since the medical opinion would have been based on Dr. Hale's review of matters which revealed sexual contacts of Petitioner by unidentified men both within and without the probable period of conception,[5] upon Petitioner's objection, the family court excluded the proffered testimony. The court also refused to permit the cross-examination of Petitioner regarding her 1977 pregnancy which was terminated by an abortion. Both evidentiary rulings were based on HRS § 584-14(b) and (c).

Referring to the Commissioners' Comment to § 14 of the Uniform Parentage Act (UPA) (Comment),[6] Defendant argues that the sole objective of HRS § 584-14(b) and (c) is to resolve the problem of perjured testimony where *exceptio plurium concubentium* or the multiple access defense is raised. Defendant therefore contends that HRS § 584-14(b) and (c) are inapplicable to Dr. Hale's proffered testimony to prove "nonaccess" of Petitioner by Defendant on August 4, 1978, and to cross-examination relating to Petitioner's 1977 pregnancy to impeach Petitioner. We disagree.

The reach of HRS § 584-14(b) and (c) is more expansive than as contended by Defendant. HRS § 584-14(b) excludes "[t]estimony relat-

---

[5] The family court found the probable period of conception to be from "July 24 through August 8, 1978[.]" Finding of fact no. A.9. Record Vol. 11 at 6-8.

[6] The Commissioners' Comment to § 14 of the Uniform Parentage Act states in part:

Subsections (b) and (c) deal with the problem of *exceptio plurium concumbentium* [sic] and, more specifically, the problem of perjured testimony concerning alleged sexual access to the mother offered by other men on behalf of the alleged father. It is recognized that in rare cases, these provisions may result in the exclusion of "honest" evidence. However, the Committee concluded that this is outweighed by the need for closing the door to the wanton attacks on the mother's character that characterize too many paternity suits under present laws.

9A U.L.A. 606-607 (1979).

ing to sexual access to the mother by an unidentified man *at any time*[.]" (Emphasis added.) Also, the Comment indicates that a purpose of UPA § 14 was to close "the door to the wanton attacks on the mother's character[.]" The legislature's enactment of HRS § 584-14(b) and (c) reflects its belief that "as a matter of public policy the mother is entitled to protection from uncorroborated charges of promiscuity." *Murillo v. Perez*, 206 N.J. Super. 196, 204, 502 A.2d 54, 58 (1985) (footnote omitted).

Dr. Hale's nonaccess opinion testimony would have been based on information of sexual access to Petitioner within and without the probable period of conception by unidentified men. The impeachment evidence likewise would have involved unidentified or identified men, other than Defendant, with sexual access to Petitioner clearly outside of the probable period of conception pertinent in this case. In our view, HRS § 584-14(b) and (c) do not permit the besmirching of the mother's character in the name of "nonaccess" or "impeachment." The family court properly held that HRS § 584-14(b) and (c) were applicable.

Defendant contends, in the alternative, that if HRS § 584-14(b) and (c) exclude his "nonaccess" evidence and precludes his "impeachment" cross-examination, the statute is unconstitutional. Defendant asserts that the application of the statute deprived him of his due process rights.

At the outset, we note a well-settled precept that a statute "is presumptively constitutional, and a party challenging the statute has the burden of showing unconstitutionality beyond a reasonable doubt." *Schwab v. Ariyoshi*, 58 Haw. 25, 31, 564 P.2d 135, 139 (1977). *See also State v. Mueller*, 66 Haw. 616, 671 P.2d 1351 (1983). In our view, Defendant has failed to meet this burden.

"The legislature in its discretion may, without denial of due process of law, prescribe changes in the rules of evidence for the trial of civil cases, . . . subject . . . to the limitation that it may not preclude a party from presenting the facts supporting his theory of the case." 16D C.J.S. *Constitutional Law* § 1164 at 85 (1985). Our legislature in its judgment deemed that societal needs required restriction in the admissibility of sexual access evidence in paternity cases and enacted HRS § 584-14(b) and (c). However, as we stated in *Doe IV v. Roe IV*, 5 Haw. App. 558, 705 P.2d 535 (1985), "the statute does not foreclose all testimony regarding sexual relations, but only such relations allegedly occurring with unidentified men or with identified men other than during the conception period." *Id.* 5 Haw. App. at 563, 705 P.2d at 541 (footnote omitted).

Thus, an alleged father is not precluded from presenting unexcluded pertinent facts regarding sexual access. Moreover, the right of cross-examination is not absolute without restriction even in criminal cases. *State v. Jones,* 62 Haw. 572, 671 P.2d 1214 (1980). Thus, we see no due process of law problem.

Our research did not uncover any reported case discussing due process of law in the context of UPA § 14. However, statutes excluding certain evidence in paternity proceedings have withstood due process challenges in other jurisdictions which have paternity statutes other than the UPA. In *"HH" v. "II",* 31 N.Y.2d 154, 335 N.Y.S.2d 274, 286 N.E.2d 717 (1972), *appeal dismissed,* 409 U.S. 1121, 93 S. Ct. 945, 35 L. Ed. 2d 254 (1973), there was a constitutional challenge to a statute which, in a paternity proceeding, excluded a respondent's uncorroborated proof of access by others to the woman involved. The court found no constitutional infirmity on due process of law grounds regarding the statute.

In *Cardenas v. Chavez,* 103 Mich. App. 646, 303 N.W.2d 3 (1981), the statute expressly provided that blood test results are admissible in paternity actions only in cases where definite exclusion is established by those results. The plaintiff-mother contended that the exclusion from evidence of HLA (human leukocyte antigen) blood test results deprived her of due process of law. The Michigan Appellate Court stated:

> The provisions of the Paternity Act as presently written did not deny plaintiff of her right to a meaningful hearing, nor did the exclusion of the HLA test results from evidence deny plaintiff an opportunity for a fair and effective trial. Other evidence supporting plaintiff's claim of paternity was available. Therefore, the burden placed before plaintiff by these provisions of the Paternity Act was not so great that the act is devoid of all rationality.

*Id.* 103 Mich. App. at 648, 303 N.W.2d at 4 (citation omitted).

Accordingly, we hold that the family court's exclusion of sexual access evidence proffered by Defendant and preclusion of cross-examination of Petitioner regarding her 1977 pregnancy were neither errors of law nor abuses of discretion.

### B. *Petitioner's Diaries and the Appointment of Experts*

Both Petitioner and Defendant sought pretrial discovery of each other's diaries. To protect the parties' rights of privacy, the family court

judge[7] conducted an *in camera* examination of the diaries and on May 13, 1982, filed orders containing "excerpts" from the diaries which were deemed to be relevant or reasonably calculated to lead to discovery of admissible evidence and were to be disclosed.

On March 24, 1983, about five weeks before the scheduled trial, Defendant filed a motion to compel production of Petitioner's original diaries. On April 15, 1983, the family court denied the motion. However, on April 27, 1983, the court *sua sponte* appointed a special master to review Petitioner's original diaries and "[t]o assist the parties and the Court, to ensure that each party has an opportunity to review the accuracy and authenticity of the diaries, extracts and modifications[.]" The order required Petitioner and Defendant to

> prepare a written list of questions and requests each party wants the Special Master to answer or perform concerning the diaries, other material and extracts. . . . The Court will decide which of the questions and requests the Special Master will answer and perform. The Special Master shall promptly prepare and file a written response to the questions and requests.

Record Vol. 8 at 286-87.

In the interim the trial commenced on May 2, 1983. Instead of filing a list of questions and requests, on May 16, 1983 and June 2, 1983, Defendant filed motions seeking to have an expert retained by Defendant's counsel, but supervised by the Special Master, examine Petitioner's diaries. Both motions were denied.

After the filing of Defendant's third motion on June 21, 1983, the court on June 30, 1983, ordered the Special Master to review Petitioner's original diaries and to complete certain tasks based on Defendant's requests. The order also directed the Special Master to file an appropriate motion if "expert assistance is needed to assist her in her review of the subject material[.]" Record Vol. 9 at 130. Without filing a motion for expert assistance, the Special Master filed her report on August 3, 1983. In her report the Special Master indicated that she consulted a "nationally recognized expert in the area of questioned documents[,]" and

---

[7]Judge Donald K. Tsukiyama conducted the *in camera* examination of the diaries. Later, on July 7, 1982, Defendant moved to have Judge Tsukiyama recuse himself from the case because Defendant and his counsel "reasonably question[ed] this Court's ability to be impartial[,]" after having read Defendant's personal diaries. Record Vol. 4 at 66. On September 3, 1982, Judge Tsukiyama granted Defendant's motion to recuse.

 

based on such consultation, determined that submission of the material to an expert for analysis would be of no assistance. Record Vol. 10 at 19h. On August 17, 1983, the Special Master filed a supplement to her report answering questions interposed by Defendant.

On August 17, 1983, Defendant filed a motion for the "[a]ppointment of an expert examiner of questioned documents" to examine and analyze Petitioner's original diaries. Record Vol. 10 at 22. On September 20, 1983, the court denied the motion stating, *inter alia:*

> During the trial in this case, Petitioner was thoroughly cross-examined[8] by Defendant's attorneys concerning Petitioner's diaries[.]

> \* \* \*

> With regard to certain entries, including the August 4, 1978 entry, Petitioner acknowledged during the trial that she sometimes made entries in her diary after the day on which the recorded event occurred. Therefore, there is no need for expert analysis to determine whether Petitioner made all diary entries on the same day as the occurrence of the event mentioned in the diaries.

> The Court is therefore not persuaded that expert analysis would assist the Court in deciding the issues of this case.

Record Vol. 10 at 70 (footnote added).

Defendant asserts that the family court abused its discretion in refusing to allow "Petitioner's diaries [to be] reviewed and analyzed by handwriting experts[.]"

Based on the record as summarized above, we find no abuse of discretion by the family court. Rather, in our view, the court exercised its discretion judiciously.

### III. AWARD OF CHILD SUPPORT

The Support Order includes 35 findings of fact and 33 conclusions of law. The undisputed findings disclose that Petitioner graduated from college, is unmarried, and is employed as a buyer for a department store. Her annual salary as of 1984 was $34,000. She owns a two-bedroom

---

[8]Defendant's counsel's cross-examination of Petitioner extended over five full days and eight half days.

condominium apartment subject to a mortgage of $48,000. She also owns a 1978 BMW which is fully paid for and has a vested interest of about $54,500 in her employer's profit-sharing plan. Petitioner has no obligation to support anyone other than her child involved in this action.

Defendant was married in 1981 but has no children from the marriage. He is licensed to practice law but his employment is with a family partnership and a family connected corporation. Based on the court's finding, which Defendant disputes, Defendant's gross yearly income for the period from 1978 through 1984 averaged about $110,000. Defendant admitted to owning assets having a net worth of $2,300,000.[9] Defendant has no obligation to support anyone other than his wife who is also employed.

Based on its findings and conclusions, the family court[10] issued an award requiring Defendant to make the following payments.

1. For "basic" child support, $1,600 (80% of $2,000) per month from July 5, 1985 until April 20, 1992. Thereafter, $1,900 (80% of $2,375) per month until the child attains 18 years of age, graduates from high school, or discontinues high school, whichever last occurs; provided, if the child continues with post high school education, the payment shall continue until the child graduates or attains 24 years of age, whichever first occurs;

2. For birth related expenses, $432.80; for past child support through September 30, 1984, $49,970.40; and for past child support from October 1, 1984 through June 30, 1985, $14,400, less any court ordered child support payments already made;

3. For "educational" support, 80% of the child's tuition, excluding summer school, plus $500 per school year, commencing July 1, 1985. For post high school education, 80% of the child's tuition without deductions for scholarships, plus the additional cost of coach class air transportation for two trips between the child's home and school. All payments to be made into a trust fund established with a Hawaii trust

---

[9]The family court found that Defendant's "asset net worth is not less than $2,500,000.00." Finding of fact 30. In her answering brief Petitioner claimed that the value of Defendant's net assets totaled $3,883,829.

[10]Different judges presided at the trials to determine paternity and child support award. Judge Daniel G. Heely was involved in the paternity phase and Judge Raymond Engle sat in the child support phase of the case.

company; and

4. For "travel opportunity" support, $2,000 plus cost of two first class round-trip tickets between Honolulu and New York City annually commencing July 1, 1985 until July 1, 1993. Thereafter, $3,000 plus cost of two first class round-trip tickets between Honolulu and New York City annually with the last payment to be made on July 1, 2000. All payments are to be made to the aforesaid trust fund.

Defendant challenges 12 of the findings and 28 of the conclusions and asserts that the family court abused its discretion in making the child support award. We hold that based on the relevant facts in this case, the award is excessive and therefore the court abused its discretion.

### A. *Applicable Legal Principles*

Under HUPA, the relationship between any parent and child, including the duty of support, is not dependent on marriage. HRS § 584-2. Thus, upon a finding of paternity, the family court may enter an order for child support payments against the father. "In determining the amount to be paid by [the father] for support of the child and the period during which the duty of support is owed," HRS § 584-15(e) requires the court to "consider all relevant facts," including the following:

(1) The needs of the child;

(2) The standard of living and circumstances of the parents;

(3) The relative financial means of the parents;

(4) The earning ability of the parents;

(5) The need and capacity of the child for education, including higher education;

(6) The age of the child;

(7) The financial resources and the earning ability of the child;

(8) The responsibility of the parents for the support of others; and

(9) The value of services contributed by the custodial parent.

In the determination of the support award, "it is appropriate that a full exploration be conducted in each of the statutorily enumerated factors[.]" *Vasquez v. Bolduc,* 212 N.J. Super. 455, 457, 515 A.2d 500, 501 (1986). The implication is that the court should not rely only on one or two of the factors to the exclusion of the others.

The standard of review of the family court's findings of fact is the "clearly erroneous" test. *Doe III v. Roe III,* 3 Haw. App. 241, 648 P.2d

199 (1982). Conclusions of law are reviewed *de novo. Friedrich v. Dept. of Transportation,* 60 Haw. 32, 586 P.2d 1037 (1978); *Nani Koolau Co. v. K & M Construction, Inc.,* 5 Haw. App. 137, 681 P.2d 580 (1984). The abuse of discretion standard is applicable to the review of the child support award. *State ex rel. Parlow v. Law,* 39 Wash. App. 173, 692 P.2d 863 (1984).

We will apply the foregoing principles in the review of the Support Order.

### B. *Apportionment of Support Obligation*

Initially, Defendant contends that the family court erred in its conclusion that "Defendant should pay 80% of the basic and 80% of most special support requirements of the child." Conclusion of law 23. We disagree.

Defendant argues in his brief that since both Petitioner and Defendant have the financial ability to equally contribute to the support of the child, "the burden is largely an equal one." However, this 50-50 argument was abandoned during oral argument when Defendant's counsel conceded that an apportionment of 67% to Defendant and 33% to Petitioner would be fair. We note in passing that the UPA does not "create an irrebuttable presumption of co-equal support[.]" *Linda D. v. Fritz C.,* 38 Wash. App. 288, 300, 687 P.2d 223, 229 (1984).

Defendant asserts, however, that the respective incomes of Defendant and Petitioner do not support an 80-20 apportionment of the support obligation. Our answer is that HRS § 584-15(e) permits the court to consider not only the "earning ability" of the parents, but also their "relative financial means." Thus, we find no abuse of discretion in the court's imposition of an 80% burden of child support on Defendant. *Cf. Cleveland v. Cleveland,* 1 Haw. App. 187, 616 P.2d 1014 (1980) (in a divorce case, the court may consider the father's estate and net worth in ordering child support).

### C. *Amounts of Child Support Payments*

In the Support Order, the family court divided the support award into three component parts: basic child support, educational support, and travel opportunity support. Based on our computation, before the increases provided for in the Support Order take effect, Defendant's child support payments on an annual basis total $26,660 as follows:

| | |
|---|---:|
| Basic ($1,600 × 12) | $19,200 |
| Educational (80% of tuition[11] + $500) | 3,060 |
| Travel opportunity (2 first class round-trip tickets[12] + $2,000) | 4,400 |
| | $26,660 |

The basic child support will increase on May 1, 1992, the educational support will increase as tuition costs increase and if the child goes away for her post high school education, and the travel opportunity support will increase on July 1, 1993.

Defendant contends that the family court abused its discretion in making the total child support award. We agree.

We do not agree with Defendant that the need of the child is controlling. Nor do we believe, however, that the child's support should be determined mainly on the non-custodial father's standard of living. *Ellen N. v. Stuart K.,* 88 Misc. 2d 280, 387 N.Y.S.2d 367 (1976). The court must be cognizant of the fact that "to raise [the mother's] standard of living through the vehicle of child support would constitute the imposition of an unauthorized obligation on part of the father toward the mother." *Kathy G. J. v. Arnold D.,* 116 A.D.2d 247, 255, 501 N.Y.S.2d 58, 64 (1986), *cert. denied,* ___ U.S. ___, 107 S. Ct. 927, 93 L. Ed. 2d 979 (1987). Also, an award for child support is for the child's current needs based on the child's appropriate standard of living and not for the purpose of saving portions thereof for future needs.

We will review the three components of the child support with the foregoing considerations in mind.

### 1. Basic Child Support

The family court concluded that, exclusive of education and travel, "the appropriate basic support requirements level of the child is presently $2000.00 per month in order to achieve the appropriate standard of living for the child." Conclusion of law 20. The findings and record do not support this conclusion.

In her income and expense statement filed on July 3, 1984, Petitioner

---

[11]The tuition is $3,200 for Punahou School kindergarten. Finding of fact 20.

[12]There is nothing in the record regarding the cost of a first class, round-trip flight ticket between Honolulu and New York. We set such cost to be $1,200.

listed her child's monthly expenses (inclusive of school expense of $320) as totaling $820. One-half of general monthly expenses for mortgage, utilities and apartment maintenance fees, and car expenses equaled $434. Thus, the child's monthly expenses, exclusive of schooling, totaled $934.

Petitioner's testimony indicated that the actual expenditures for the child were based solely on her limited income. Her position was that, with Defendant's contribution of child support, the monthly expenditure would be increased by $500[13] of which $250 would be for travel expenses. Thus, with support contribution from Defendant, the monthly expenses, exclusive of schooling and travel expenses, would total $1,184.

However, stating that "it is better to be approximately right than be exactly wrong[,]" the court boosted the basic support requirement to $2,000 per month. Conclusion of law 20. Furthermore, without supporting evidence in the record, the court determined that the monthly basic support requirement would increase to $2,375 commencing May 1, 1992, "because of the increased age of the child." Conclusion of law 24. We hold that the family court abused it discretion regarding the amount of basic child support.

We conclude that based on the record the basic monthly child support would be $1,200[14] of which Defendant should pay $960. Also, the automatic increase scheduled to commence May 1, 1992 should be deleted, subject to the right of Petitioner to seek an increase pursuant to HRS § 584-18.

2. Educational Support

Both the Petitioner and the child were interested in the child attending Punahou School, a private school, and the child has been admitted there. Based on the child's needs and her parents' standard of living and earning ability, we find no abuse of discretion in the court ordering Defendant to pay 80% of the child's tuition and other costs, including post high school education or training. Regarding post high school

---

[13]The $500 increase consisted of $50 more for food, $50 more for clothing, $100 more for recreation, $50 more for gifts to others, and $250 for travel.

[14]We rounded out $1,184 to $1,200.

education or training, however, we find it unreasonable not to permit deductions for scholarships. We conclude that if the child receives a scholarship, grant, or other entitlement covering full or partial costs of tuition and other expenses, Defendant's, as well as Petitioner's, obligations for the child's educational support should be reduced proportionately based on the 80-20 formula.

For consistency, the Support Order should be modified so that Defendant's share of educational support until the child finishes high school would be 80% of the tuition, including summer school, books, fees, and other school expenses, and the payment of $500 by Defendant should be deleted.

### 3. Travel Opportunity Support

The family court found that in her employment as a buyer, Petitioner takes about five two-week buying trips a year. Defendant also travels regularly. It is not unreasonable therefore to allow the child of Petitioner and Defendant to have travel opportunities. Petitioner's position was that if Defendant had contributed to the child's support, $250 per month or $3,000 per year would have been expended for the child's travel.

The court's award of travel opportunity support was not unreasonable, but the amount awarded was excessive and an abuse of discretion. In our view, based on the consideration of all relevant factors, including the fact that the child will be in school at least nine months each year, and maybe longer if she attends summer school, and that she will be traveling with and staying with Petitioner whose travel expenses are paid for by her employer, an award of $1,000 plus the cost of one coach class, instead of first class, round-trip ticket between Honolulu and New York is sufficient. Furthermore, with no evidence of inflationary factors in the record, the increase to $3,000 after July 1, 1993 is unsupportable.

We also conclude that the court's requiring Defendant to pay for the child's travel opportunities to and including July 1, 2000 was an abuse of discretion. On July 1, 2000, the child will be past twenty-one years of age. A parent's obligation to support a child generally ceases when the child attains the age of majority, which is eighteen years in Hawaii. *See* 50 Am. Jur. 2d *Parent and Child* § 102 (1971). It is true that HRS § 584-15(e) permits the family court to extend the obligation to support the child beyond the age of majority based on all relevant facts. However,

there is nothing in the record to support the court's decision to require Defendant to pay travel opportunity support beyond April 20, 1997, when the child attains eighteen years of age. Moreover, we note that, if the child pursues post high school education away from home, the Support Order requires Defendant to pay the transportation costs for two trips[15] between Hawaii and the school location.

## IV. AWARD OF ATTORNEY'S FEES AND COSTS

Regarding attorney's fees and costs, HRS § 584-16 provides in part as follows:

Costs.   The court may order reasonable fees of counsel, experts, and the child's guardian ad litem, and other costs of the action and pretrial proceedings, including blood tests, to be paid by the parties in proportions and at times determined by the court.

Petitioner sought an allowance of $171,003.56 for attorney's fees and $23,540.66 for costs, or a total of $194,544.22. In its Fee Order, the family court awarded Petitioner a total of $154,349 for fees and costs to be paid by Defendant. Defendant claims that the award is unreasonable, "exceed[ing] any rational measuring base." We disagree.

The family court is given broad discretion to award attorney's fees and costs under HRS § 584-16. *L. D. G. by and through S. G. v. E. R.,* 723 P.2d 746 (Colo. App. 1986). And the court's award will not be disturbed on appeal if the record discloses adequate showing of reasonableness of the award. *E. M. F. v. N. N.,* 717 P.2d 961 (Colo. App. 1985).

Here, the record includes affidavits of Petitioner's counsel, together with detailed summaries of the services rendered, time spent, hourly rates, and costs incurred. Also, Petitioner's counsel was cross-examined under oath by Defendant's counsel regarding the time sheets and costs incurred. Based on such evidence, the court excluded certain fees and costs and made its award on a proportional basis in the Fee Order.

Accordingly, we find no abuse of discretion in the family court's award of attorney's fees and costs and affirm the Fee Order.

---

[15]The Support Order merely states "two trips." We assume this means two round trips annually.

### V. CONCLUSION

We affirm the family court's March 16, 1984 Paternity Order and July 17, 1985 Fee Order. However, we vacate the July 15, 1985 Support Order, remand the case, and direct the family court to amend the Support Order as follows:

1. The basic support requirement for the child shall be reduced from $2,000 per month to $1,200 per month.

2. Regarding basic child support, Defendant shall pay $960 per month, payable in two installments of $480 each on the 5th and 20th days of each month, instead of $1,600 per month payable in two installments of $800 each. Also, the automatic increase in the payments commencing May 1, 1992 is to be deleted.

3. Regarding past child support during the period of October 1, 1984 through June 30, 1985, Defendant shall pay $8,640 (9 months × $960), instead of $14,400, less any court ordered child support payments already made. The birth related expenses of $432.80 and past child support through September 30, 1984, of $49,970.40 are to remain unchanged.

4. Regarding educational support, Defendant shall contribute to the trust fund commencing July 1, 1985, and annually thereafter on or before July 1, 80% of the child's full annual school tuition (including summer school, if applicable) and the estimated cost of books, fees, and other school expenses each year. If Defendant's deposit does not cover his share of the cost, he shall promptly deposit the balance. Regarding post high school educational support, if the child receives a scholarship, grant, or other entitlement covering tuition and other costs, Petitioner's and Defendant's obligations shall be reduced proportionately on an 80-20 basis. All remaining provisions relating to educational support are to remain unchanged.

5. Regarding travel opportunity support, Defendant shall contribute to the trust fund commencing July 1, 1985, and annually thereafter on or before July 1, $1,000 plus the estimated cost of one coach class, round-trip ticket between Honolulu and New York City with the obligation ending on April 20, 1997, when the child attains eighteen years of age. Other provisions dealing with the increases in the amount of travel opportunity support are to be deleted.

6. Regarding the trust provisions in the Support Order, no amendments are required.

646

Affirmed in part, vacated in part, and remanded for further proceedings consistent with this opinion.

*Alexander T. MacLaren* (*Walter G. Chuck* with him on the briefs; *Walter G. Chuck, Attorney at Law, A Law Corporation,* of counsel) for defendant-appellant.

*Charles W. Totto* (*Edward R. Lebb* with him on the brief; *Ing and Lebb,* of counsel) for petitioner-appellee.