Saxe, J.P.
(concurring in part and dissenting in part). The child support award challenged here, determining that respondent father’s share of basic child support comes to $3,053.67 per month, should be affirmed in its entirety. There is nothing unreasonable or insufficiently supported in the amounts calculated by Family Court for the child’s support in the categories of *453 clothing, toys, or entertainment to justify the kind of tinkering in which my colleagues have engaged. As to the dissent’s proposal to reduce from one half to one third the child’s share of petitioner mother’s monthly expenses for rent, utilities, and automobile, it is both arbitrary and unsupportable.
On a previous appeal in this matter (28 AD3d 251 [2006]), this Court reversed and remanded an earlier child support award that had been calculated by applying the 17% rate dictated by the Child Support Standards Act (CSSA) (Family Ct Act § 413) to the parties’ entire combined income of approximately $375,000. While the CSSA requires the standard rate to be applied to the first $80,000 in combined parental income regardless of the child’s actual needs (Family Ct Act § 413 [1] [c] [2]), when child support beyond that amount is contemplated, the court must consider a variety of factors in determining the amount of income in excess of $80,000 to which the percentage will be applied (Family Ct Act § 413 [1] [f]).
Of course, the CSSA applies regardless of whether the parties were married or ever lived together (see Matter of Jones v Reese, 227 AD2d 783, 784 [1996]). Although the requisite consideration of “[t]he standard of living the child would have enjoyed had the marriage or household not been dissolved” (Family Ct Act § 413 [1] [f] [3]) may apply a bit differently when the parties never lived together, both parents’ standards of living are appropriately taken into consideration in determining, as we directed on the prior appeal, “the amount that is required for the child to live an appropriate lifestyle” (28 AD3d at 252 [emphasis added]).
The Support Magistrate held a hearing to consider the child’s actual needs and the amount required for the child to live an appropriate lifestyle so as to determine the appropriate amount to award for child support beyond the standard percentage of the parents’ first $80,000 in income. He heard petitioner’s testimony as to her expenses, some of which, such as rent and utilities, are easily proven down to the penny, others of which, such as entertainment, necessarily require a certain amount of averaging and estimating. Petitioner also submitted large amounts of documentation, including spreadsheets that she created for each month from October 2005 to April 2007 using bills and some store receipts. She did not establish by individual store receipts all payments made in all categories of her expenses; in some categories, such as clothing and toys, she established some expenses paid by her and by her mother through debit card bill references to transactions at particular stores. In the category of entertainment, rather than accumulating and *454 submitting bills and receipts for every activity, petitioner explained that she arrived at the $300 per month figure by averaging the amount it cost her to go with the child on vacation, and to take him to the circus, the zoo, concerts, and museums, as well as certain other activities such as birthday parties for the child.
Two of my colleagues, Justices Freedman and Renwick, now vote to affirm the portion of the award that attributed one half of petitioner’s rent, utilities, and automobile expenses to child support, as well as the amounts awarded for child support broken down into the categories of food, cleaning, education, laundry, haircuts, and photographs. However, these two Justices vote to reduce the amount calculated as appropriate in the categories of clothing and toys. My two other colleagues, Justices McGuire and Sweeny, also vote to reduce the amount awarded in the categories of clothing and toys, but in addition, would reduce to a one-third share the amount of petitioner’s rent, utilities and automobile expenses attributed to the child, and as to the amount allocated to entertainment, would cut the monthly allowance from $300 to $150. Therefore, my four colleagues all agree that the amounts awarded for the child’s clothing and toys should be reduced and that the amounts awarded for food, cleaning, education, laundry, haircuts and photographs should be affirmed. They are evenly split on the appropriate percentage of rent, utilities, and auto expenses to attribute to the child, as well as the entertainment allowance.
I concur with Justices Freedman and Renwick insofar as they vote to affirm the portion of the award allocating to the child one half of petitioner’s rent, utilities, and automobile expenses. As to her automobile expenses, there is nothing erroneous about such an allocation. Petitioner’s inability to provide a numerical, hour-by-hour or mile-by-mile breakdown of how her automobile is used does not invalidate the 50% estimate. Nor was Family Court bound to determine how the custodial parent made use of her vehicle prior to the child’s birth in comparison to how she uses it now. Indeed, regardless of how her life was lived previously, a single parent with a young child frequently spends most, if not all, of her driving time doing things for the direct or indirect benefit or in the interests of the child. The 50% allocation was reasonable and proper.
Similarly, the Support Magistrate did not err in attributing to the child one half of the cost of petitioner’s rent. In determining what portion of the rent should be allocated to a child, the finder of fact need not determine what the custodial parent had paid for rent when living alone before having a child. Indeed, the *455 custodial parent may still live in the same apartment she lived in before having a child and still be entitled to a portion of the rent as child support. Once a child lives in a home, that child’s presence changes the allocation and usage of space; in many homes a child and the furnishings and paraphernalia acquired for his or her care effectively take over most of the premises. This is not to say that a petitioner must establish square-footage usage in order to claim a percentage of the rent as child support. Rather, it is simply to illustrate that the dissent seeks to impose an untenable burden on a custodial parent who is asking that a percentage of the rent be attributed to the child. A reduction to one third of the rent finds no particular support in the record; the one half awarded by Family Court was reasonable and appropriate, and as such is properly affirmed.
As to the allocation of the cost of utilities, again, a custodial parent’s use of things like the telephone, cable television, and Internet service, whatever they were before the child was born, often becomes focused largely, if not predominantly, on the child’s life and needs thereafter. The Support Magistrate therefore was not bound to calculate the difference between petitioner’s use of such services before having a child and her use of them afterward. Moreover, even where, as here, the child is an infant currently unable to use a telephone or change a television channel, it is appropriate for a factfinder making a permanent support award to recognize that within a few short years the child will be making independent use of those and other services. The determination in this regard was sufficiently supported to warrant its affirmance by this Court.
I dissent to the extent that all my colleagues agree to reduce the portion of child support attributable to clothing and toys. Such a reduction would be appropriate if we were to determine either that petitioner failed to prove that she actually spends that much on the child, or that the parties’ lifestyles do not justify that level of expenditure on their child. We should not be tinkering with the award based on our own personal views of what we believe to be excessive expenditures on children. Our own lifestyles and values should not be the governing standard under which we examine awards of child support.
To say that $496 per month is an excessive allowance for a child’s clothing, while $375 per month is the proper amount, is essentially arbitrary in view of petitioner’s proof of her expenditures. The petty nature of this reduction of amounts petitioner actually spent is illustrated by the pronouncement of disapproval regarding petitioner’s purchase of 10 bibs at once. The record does not reflect that this purchase was unreason *456 able, particularly since at the stage of a young child’s life when he needs bibs, they are quickly dirtied, and in any event, it does not appear that petitioner habitually purchased inordinate quantities of unreasonably expensive bibs on a regular basis. With regard to the appropriate standard to employ in judging this aspect of the award, it is relevant that respondent claims to spend $1,000 per month on his own clothing, which in itself reflects a lifestyle. While an employed adult certainly has need of types of clothing that children do not, children’s clothing needs to be replaced far more frequently.
Similarly, the $391 per month allowance for toys, books, videos, and gifts, including birthday and Christmas gifts, while a significant sum, was supported by petitioner’s evidence and is an appropriate average expenditure commensurate with the parties’ incomes and lifestyles. Again, it should be irrelevant whether Justices of this Court believe this to be too great an amount to spend on a child’s toys, books, etc.; the only question we should address is whether the amount accurately reflects expenses actually incurred on behalf of the child, and whether it is reasonable given the parents’ lifestyles. Another relevant point is that since respondent has no contact whatsoever with the child, leaving petitioper to provide all the parental guidance—and treats—the child will receive, it is arguable that these circumstances create a greater than usual need for items in this category.
As to the portion of the child support calculation attributable to the child’s entertainment, the dissenters’ proposed reduction from $300 to $150 per month is only explained by the suggestion that petitioner failed to provide sufficient proof of each one of the child’s activities. However, these are the types of activities for which parents often pay in cash and don’t usually keep receipts. The Support Magistrate appropriately awarded an amount commensurate with the lifestyles of two affluent New York-area professionals, in line with the types of ordinary activities to which petitioner testified, which will only increase with the child’s age. The cost of one yearly vacation with the child, a yearly birthday party for the child with his classmates, plus typical weekend attendance at such venues as movie theaters, roller rinks, zoos, circuses, museums, and video arcades, with adult supervision, would alone approximate the Support Magistrate’s calculation of the entertainment expense for this child. On this point it is also worth noting that respondent, in his financial disclosure affidavit, claimed to spend, on average, $1,000 per month on his own entertainment.
Finally, I note that the child support award is not of an *457 amount that would serve to raise petitioner’s standard of living (see Matter of Kathy G. J. v Arnold D., 116 AD2d 247, 255 [1986], lv dismissed 68 NY2d 713 [1986], cert denied 479 US 1054 [1987]).
An affirmance of the child support award is warranted in all respects.